## MURDOCK MOTOR CORP. v. KIRK.

No. 19248.   Opinion Filed April 8, 1930.

Massingale & Duff, for plaintiff in error.

W. S. Meyer, for defendant in error.

BENNETT, C.   Murdock Motor Corporation, plaintiff, brings this suit against Royal J. Kirk, defendant, for the recovery of an Oakland Landau sedan, alleging that the car is worth $1,000; that possession has been demanded, and that defendant wrongfully withholds same from plaintiff, who is the owner and entitled to the possession thereof. The prayer is for possession of the car, or for its value, etc.   The defendant by his answer makes a general denial.

The facts appear in brief as follows: Plaintiff was engaged in 1927 in the sale of Oakland and Pontiac automobiles, and, in connection therewith, dealt in second-hand cars of various makes.   On August 10, 1927, defendant, who was the owner of a second-hand Ford, negotiated with one Oral Williams, a salesman of plaintiff, for the purchase of a Pontiac automobile.   The negotiations took the form of a three-cornered deal, that is, defendant wished to make his down payment by the transfer of his second-hand Ford car, but, before the plaintiff's salesman would entertain such a proposition, it was decided that a purchaser for the Ford should be found and the consideration therefor paid to plaintiff as the down payment upon the purchase price of the Pontiac car.   The negotiations were kept up from about nightfall until near midnight on the last-named date, resulting in a sale of the second-hand Ford, either by the plaintiff's salesman or by his joint efforts and those of defendant, to one James Henderson, a colored man, for the sum of $251, $86 of which was paid by check; the remainder was due in installments secured by retention of title contract covering the Ford. Whereupon the defendant signed a written order addressed to the plaintiff providing, among other things, as follows:

"You are authorized to enter my order for the used automobile described below, which is purchased in its present condition and subject only to such alterations and representations as are noted in writing below:

"Date 8-10 1927

"Name of Automobile, Pontiac Model 27

"Body Type, Coupe

"Serial Number 50202, Engine Number 51046,

"Selling Price $650.00 * * *

"I agree to pay for the above car and equipment as follows: * * *

"Allowance on car being turned in as part payment $251 (which is described as the total down payment)."

The order provides for subsequent monthly payments of $42 and proceeds:

"I agree to accept the car and equipment ordered above and pay for it in accordance with the above terms within ten (10) days from the time you advise me it is ready for delivery, and failure to do so shall be a breach of this agreement. * * *

"No agreement, verbal or otherwise, not contained in this order, shall be binding or recognized.

"This order is not valid unless signed and accepted by an officer of the company or some authorized agent.

"(Signed) Royal J. Kirk,

"Residence Address, 538 So. Del.,
"Business Address, 117 W. 8th St.
"Res. phone____Bus. phone 40269
"Nature of Business
"Make of car previously owned_____
"Accepted by _____
"Title _____
'Salesman, Williams.
"Delivery date _____"

A similar order seems to have been made addressed to the plaintiff on the same date and describing the second-hand Ford, and setting out the down payment therefor as $86, and that the remainder of the purchase price was to be paid in eight monthly installments. These orders appear to be identical in all respects save as to description of the cars and the amount of payments. The one covering the Ford is signed by James Henderson; the other was signed by defendant.

Just about midnight, upon signing and delivery of these papers, defendant Kirk drove the Pontiac automobile to his home and Henderson took possession of the Ford. It was in evidence by the defendant that Williams promised that certain adjustments would be made in the Pontiac, if found to be needful, whenever defendant should require the same. On the succeeding day the defendant found difficulty in running his car and gave notice to the plaintiff, whereupon the car was carried to the shop of plaintiff for such adjustments.

The real issue tried out in the court below between the parties hereto seems to have been made to depend upon whether or not there was an unconditional delivery of the Pontiac car to defendant on August 10th. It was the contention of plaintiff (and all of its evidence sustained the contention), that the defendant was permitted to drive the Pontiac car to his home on the night of the 10th of August, but that he was to return it on the following day, and that no complete delivery of the same was made under the contract; that the intervening time was to be used by the credit department of plaintiff in investigating the credit of defendant and of Henderson and in making certain inquiries through Merchants Retail Association and others, in order to determine whether the said Kirk and Henderson were desirable credit risks, and that no completed deal could be made with reference to either contemplated sale until the credit department of the plaintiff had gotten this information and had passed upon said parties as desirable for credit. Plaintiff contended that, since the credit risks were found unsatisfactory, no final delivery of the cars was made.

Plaintiff's evidence also tends to show that when the car was brought back the next morning, that is, on the 11th of August, the credit investigation had not been completed, and that while the same was being completed, the adjustments on the Pontiac car were being made and were made, and that defendant was requested to come back on the succeeding day when the Pontiac car would be ready for delivery and the sale completed, unless the credit of the defendant and Henderson should be found by the credit department unsatisfactory, and that the said salesman, Williams, permitted the defendant to use the Oakland Landau car in controversy here, which was worth about $1,000, until the delivery of the Pontiac, or until the credit of said Kirk and Henderson was found to be unsatisfactory.

The plaintiff's evidence further tends to show that the defendant came back according to request, and the company, through its credit department, informed the defendant that his credit was such as to make it impossible for them to carry out the sale, and that the credit of the colored man was not at all satisfactory, and that the deal would have to be declared at an end. Plaintiff then paid back to the colored man his check for $86, delivered the Ford car at the home of defendant, and asked the defendant to consider the deal at an end. Whereupon the defendant, over the protest of plaintiff, drove away in the Oakland Landau sedan car, which had been loaned to him, and has refused ever since to turn it over to the plaintiffs. Plaintiff's evidence also indicates, and

several witnesses testify, that Williams was simply a salesman who had no authority whatever to sell upon time or extend credit, and that he did not undertake to do so.

On the other hand, the defendant contends, and his evidence is to the effect, that on the night of the 10th of August, after signing up the papers, the Pontiac car was turned over to him without condition; that he could read the written order when he signed, but did not do so, and that, on the following day, when he brought the car back to have the adjustments made, the plaintiff, through Mr. Williams, permitted him to drive and to use the Oakland car until the adjustments were completed on the Pontiac car.

The defendant further testified that there was a contest on, and the plaintiffs were anxious to close the deal with him by midnight in order to determine whether the north side or the south side of the used car lot would win the contest as to sales of second-hand automobiles, and that when he took his Pontiac car back to the company's place for adjustment, Mr. Williams said, "Now, I will give you this car; go ahead and use it," and suggested that defendant leave the Pontiac there all day so that they might make the necessary adjustments. Defendant further testified that he caused the colored man, Henderson, to come over and take the Ford away after plaintiff had returned it to defendant's home.

The case is briefed by the plaintiff in error chiefly upon the theory that the Pontiac car never was finally delivered to the defendant, but that such delivery thereof as was made was only temporary, and until inquiry could be made, and the fact determined that the defendant and Henderson were satisfactory as credit risks, at which time it was to be delivered unconditionally; otherwise, it was not to be delivered. It is briefed on the part of defendant in error upon the theory that the delivery of the Pontiac on the night of August 10th was an absolute, unqualified, unconditional delivery, and that the title passed, and both parties seem to treat in their briefs this question as determinative, and the case seems to have been tried by the court to the jury, and their verdict found for defendant upon this theory.

We think the case was tried upon the wrong theory. It should be borne in mind that the plaintiff here was not seeking the recovery of the Pontiac car which is alleged to have been sold, but is suing for the Oakland sedan which was not sold, and which was not attempted to be sold, but which

was only loaned to the defendant for temporary use. Assume the defendant to be correct in his contentions that there was an unconditional delivery of the Pontiac car and that the sale was thereby completed. That transaction was complete in itself on August 10th. The contract of purchase had been executed and the defendant owned the Pontiac car. There was no provision in the contract to purchase, or in the negotiations, looking towards the borrowing or using or lending of the Oakland car, and when on the next day the defendant put his car in plaintiff's shop to have adjustments made, he had no right under his contract to call for, or to expect the use of the Oakland car, but plaintiff voluntarily loaned the use of the car to defendant without compensation or the hope thereof. What then was the legal status of the parties?

Section 5107, C. O. S. 1921, is as follows:

"A loan for use is a contract by which one gives to another the temporary possession and use of personal property, and the latter agrees to return the same thing to him at a future time without reward for its use."

Section 5117, C. O. S. 1921, is as follows:

"**Lender May Require Return.** The lender of a thing for use may at any time require its return, even though he lent it for a specified time or purpose. But if, on the faith of such an agreement, the borrower has made such arrangements that a return of the thing before the period agreed upon would cause him loss, exceeding the benefit derived by him from the loan, the lender must indemnify him for such loss, if he compels such return, the borrower not having in any manner violated his duty."

The language of this section is clear, and we think its meaning is beyond question. Of course, if we assume that the delivery of the Pontiac car was conditional as claimed by the plaintiff, clearly the defendant cannot recover, for there is no dispute that the credit department, upon information received, turned down the defendant and Henderson as credit risks.

The point presented here has been decided in the case of Parsons v. Eisele, doing business as the Eisele Motor Company, No. 18238, decided December 31, 1928, 137 Okla. 35, 277 Pac. 643. In that case the plaintiff claimed to have bought an automobile from the defendant for $1,100, which the defendant did not have on hand at the time for delivery. On the next day, when it was found the delivery could not be made promptly, the defendant loaned the plaintiff another car to be used without compensation

until the delivery of the property covered by the agreement of sale. It was held therein that the first contract, if valid for any purpose, "was a complete agreement before anything whatever was said about allowing defendant to use the touring car, either for the one day as was claimed by plaintiff, or until the delivery of the Gorton car, as contended for by defendant. That was a separate agreement entered into after the agreement, if any, for the sale of the car, and at most, was a mere contract for the loan of the touring car for an indefinite period."

In the opinion the same sections of the statute we have referred to above are cited. The court also refers to 6 C. J. 1099, and 6 C. J. 1101, wherein it is said that one of the classes of bailments is the gratuitous loan of goods to be temporarily used by the bailee and returned in specie. This kind of bailment or loan is defined in many cases to be a gratuitous loan or loan for the benefit only of the bailee.

With these principles of law in view, the nature of the contract entered into on the preceding day with respect to the purchase of the Pontiac car becomes immaterial and unimportant, for the loan of the car sought here to be recovered was not a part of that contract, nor provided for therein, nor contemplated at that time between the parties. The agreement to lend the Oakland car was in no way dependent upon what was done the day before, but seems to have arisen by spontaneous act and effort on the part of plaintiff to promote the defendant's convenience. To hold otherwise would lead to results which would be startling in the extreme.

These parties made their own contract as to the loan of this property. It will not do for the courts to add to a simple loan of personal property, without compensation to the owner, a provision that the only party benefited may hold the property as a guaranty of the execution of another contract of which the loan agreement is no part. To do so would be to make a better contract for one of the parties than the parties made for themselves.

The court's instruction No. 2 makes the recovery of plaintiff depend upon the authority of the salesman, Williams, to close the contract for the sale of the Pontiac car, and also upon the fact of actual closing of said contract. It also indicates that if said salesman did not have such authority the jury should then inquire whether or not plaintiff held him out to the public as having such authority, and also they should inquire whether or not his want of authority, if found to exist, could have been, by the use of due diligence, discovered by defendant. As we have hereinbefore indicated, if there were an absolute delivery and completed sale of the Pontiac car on August 10th, as contended for by the defendant, he cannot recover, for the agreement to lend the Oakland car was subsequent to and independent of such sale contract, and, of course, if the delivery were conditional, and the sale thereof depended upon a satisfactory showing of credit, as contended for by the plaintiff, under the facts in this case, no recovery could be had by the defendant.

Plaintiff requested the following special instruction:

"The jury are instructed to return a verdict in favor of the plaintiff and against the defendant for the possession of the car in question and for such damages as you find the plaintiff suffered, if any, by the wrongful detention of said car by the defendant, not exceeding $300."

This instruction should have been given by the court under the record in this case.

The parties differed widely upon the question of whether or not there was a conditional delivery, or a completed sale of the Pontiac car, but they did not differ at all, either in their contentions in the briefs, or in their evidence, as to the facts concerning the loan of the Oakland car. The first question became, under our holding, immaterial. The case was tried before a jury substantially upon an immaterial issue, and their verdict was made the predicate for the judgment, which is clearly erroneous. Further errors are pointed out, but a discussion of them will not be necessary here.

For the errors pointed out, the judgment of the trial court is vacated, and the cause is remanded for a new trial in conformity herewith.

TEEHEE, FOSTER, LEACH, and REID, Commissioners, concur.

By the Court: It is so ordered.