JOHN H. CRISMON as *Sheriff of Pawnee County, Oklahoma Territory* v. BARSE LIVESTOCK COMMISSION COMPANY, *a corporation.*

(Filed September 5, 1906.)

1. ATTACHMENT—Lien for Pasturing Cattle, Waived When. One who has a lien on cattle for pasturing them, under the terms of secs. 108 and 110 of chap. 3 of Wilson's Anno. Statutes of Oklahoma waives such lien by suing for the amount of the debt and causing the property covered by such lien to be attached in such suit, as the lien under the statute and the lien under the agreement are inconsistent, and cannot coexist in favor of the same person.

2. SAME—Chattel Mortgage. The rights of a mortgagee to the possession of personal property covered thereby are superior to those

of a sheriff who claims under a writ of attachment, sued out at the instance of another creditor of the mortgagor and levied on the property after the filing of the mortgage for record in the office of the register of deeds of the county, the attaching creditor not having paid off the mortgage or deposited the amount thereof as required by the statute.

(Syllabus by the Court.)

*Error from the District Court of Pawnee County; before Bayard T. Hainer, Trial Judge.*

*Wrightsman & Fulton* and *James B. Diggs,* for plaintiff in error.

*Biddison & Eagleton,* for defendant in error.

Opinion of the court by

Burwell, J.: One J. C. Stribling controlled a certain pasture in the Osage Indian Reservation. Palmer & Brigham, through their representative J. B. Middlebrook, entered into a contract with Stribling for the pasturing of a bunch of cattle. This contract was entered into on April 2nd, 1902. On May the 17th, 1902, Palmer & Brigham executed a chattel mortgage to the Barse Live Stock Commission Company on these same cattle to secure the payment of eight thousand three hundred sixteen and 66|100 dollars. The commission company took the cattle from the pasture for the purpose of foreclosing its mortgage, there being a balance due thereon. Stribling, through his agent, J. M. Moody, commenced suit in the district court of Pawnee county against Palmer & Brigham, claiming that there was due him, for pasturing these cattle, the sum of $2,000, and alleging that there existed in his favor a lien under sections 108 and 110 of chapter 3 of Wilson's Statutes of Oklahoma, which provides as follows:

"Sec. 108. That any person or persons employed in feeding, grazing, or herding any domestic animals, whether in pasture or otherwise, shall for the amount due for such feeding, grazing or herding, have a lien on said animals.

"Sec. 110. All liens, not to exceed in the aggregate twenty-five per cent of the value of such animals, against any domestic animal or animals for labor, grazing, herding or feeding, or for corn, feed, forage or hay, furnished the owner of such domestic animals as herein provided, and actually used for such purpose, shall be prior to all other liens thereon, and no recital or stipulation in any mortgage or other incumbrance on any cattle so fed shall be held to supersede or vitiate the lien here provided for."

At the time of the commencement of that action an affidavit of attachment was filed by Moody (Stribling's agent) on the ground that Palmer & Brigham were non-residents. An order of attachment was issued thereon, placed in the hands of the sheriff, and the cattle in question seized thereunder. They were being held by the sheriff under this writ when the present suit was commenced by the plaintiff, Barse Live Stock Commission Company, against the sheriff, John H. Crismon, to recover possession of the cattle for the purpose of foreclosing its chattel mortgage.

The question presented for our consideration is, which lien is superior, the lien of the Barse Live Stock Commission Company under its chattel mortgage, or the lien of the attachment under which the sheriff held the cattle. This question is easily answered. The chattel mortgage was executed and properly filed long prior to the levying of the writ of attachment. There was no contention that the mortgage was not a valid and subsisting mortgage. The plaintiff in the attachment suit never paid off the mortgage or offered to do so,

nor did he make a deposit of the money to pay off the mortgage as provided by the statutes. Therefore not having complied! with the requirements of the law, the attachment must fail as against the chattel mortgage. But the plaintiff in error contends, that he claims under his statutory lien for pasturing the cattle and not under the writ of attachment.

It is true that the statute gives a lien on cattle to one who feeds or pastures them for such feed, or pasture; however, conceding that Stribling had a lien for such pasturing, he waived it when he caused a writ of attachment to be issued and levied on the cattle.

The lien given under the statute on domestic animals, for feed or pasture is similar to a lien under a chattel mortgage. It may be foreclosed and the property sold to satisfy it. Where one by contract or statutory provisions has a special lien upon property to secure the payment of a debt, he must either enforce his lien or he may attach the property, if legal grounds exist therefor, but he cannot acquire both liens on the same property to secure the payment of the same debt. They are inconsistent, and cannot coexist in favor of the same person.

The supreme court of Massachusetts in *Evans v. Warren,* 122 Mass. 323 says:

"A mortgagee of personal property, by attaching the same in an action for the debt, waives his claim under the mortgage."

This rule is also laid down in Cobbey on Chattel Mortgages vol. 2, sec. 746, and Jones on Chattel Mortgages, sec. 565. And again Mr. Cobbey in the section referred to above says:

"The liens created by mortgage. and by attachment on the same property are essentially different, and cannot coexist. The effect of an attachment, by a mortgagee is to put the property out of his control, and into the custody of the law. Therefore, where the mortgagee attaches the property covered by the mortgage for another debt, not secured, due him from the mortgagor, he waives his right under the mortgage, and is estopped to plead his mortgage against subsequent attaching creditors. After thus putting the property into the custody of the law voluntarily, it would not be equitable, to allow him to set up his mortgage to defeat the custody of the law."

To the same effect is the case of *Dix v. Smith,* 9 Okla. 124. This identical question was decided in the case of *Legg v. Willard* (Mass.) 17 Pickering, 140.

S. N. Warren and L. Eames were copartners. They made an assignment for the benefit of creditors. On the day of the assignment, one Brooks and another party by the name of Curtis had in their possession about a hundred pairs of shoes, the stock of which had been delivered to them by Warren & Eames under a contract that it should be made up into such shoes. Under the law Brooks and Curtis had a lien on the shoes for the labor performed in manufacturing them, but when they heard of the assignment they sued Warren & Eames for the amount due them for making the shoes, and caused a writ of attachment to be levied thereon. The court after holding that Brooks and Curtis were entitled to a lien on the shoes for manufactuding them, further stated that, "when Brooks and Curtis attached the shoes, they waived their lien."

Nor can it be said that the sheriff held the cattle as the agent of Stribling. He did not take the cattle by reason

of such agency, but in obedience to the command of the writ of attachment. *Walker v. Summer,* (Mass.) 20 Pickering 399. Other authorities might be cited which support the rules announced in this opinion, but it is unnecessary, as this court in the case of *Dix v. Smith, supra,* adopted the rule stated, and we are satisfied with the conclusions therein reached.

By attaching the cattle Stribling waived his lien for pasturing them. He had no right to attach the cattle without first paying off the chattel mortgage. As the mortgage was duly filed with the register of deeds before the levying of the attachment, the mortgagee's lein was superior to the lien of Stribling under the writ.

The judgment is therefore affirmed, at the cost of the appellant.

Hainer, J., who presided in the court below, not sitting; all the other Justices concurring.