## PARSONS v. EISELE.

No. 18238. Opinion Filed Dec. 31, 1928.

Rehearing Denied May 28, 1929.

Lydick, McPherren & Jordan and Kittie C. Sturdevant, for plaintiff in error.

Everest, Vaught & Brewer, for defendant in error.

DIFFENDAFFER, C. This is an action in replevin for the recovery of the possession of an automobile of the alleged value of $900, and for damages for the wrongful detention thereof. The petition and affidavit were in the usual form, the allegations of damages in the sum of $100 being general. The automobile here in controversy is described as "one five-passenger second-hand Packard touring automobile." A writ of replevin was issued on June 14, 1926, and returned "Not found" on June 16, 1926. On June 26th, an alias writ was issued and served on June 28th. Defendant made a redelivery bond, and the automobile was returned to his possession by the sheriff.

Motion to require plaintiff to make his petition more definite and certain in the elements of damages was filed by defendant, and overruled by the court, after which defendant answered by general denial.

The issues as thus joined came on for trial before a jury on November 8, 1926, resulting in a directed verdict for plaintiff for the possession of the automobile. The issues as to the amount of damages were submitted to the jury, plaintiff having, under leave of court, over the objection of defendant, amended his petition as to the amount of damages claimed, after the evidence was heard, by alleging, in substance: That at the date of the commencement of the action the damages then caused by the wrongful detention of the automobile were $100; that since that date defendant had detained the possession of said property, and that the damages caused thereby were $6 per day from June 14, 1926, to this date "October 20," in a total sum of $768, for which sum plaintiff prayed judgment. The verdict was for possession of the automobile, or its value, as found by the jury, in the sum of $900, and for damages in the sum of $750. After unsuccessful motion for a new trial, judgment was entered in accord with the verdict. From this order and judgment, defendant below brings this appeal.

The parties will hereinafter be referred to as in their respective positions in the trial court.

The petition in error contains 26 specifications of error aside from the one alleging error in overruling the motion for new trial. These several assignments of error are presented in defendant's brief under five propositions, as hereinafter noted.

Defendant did not demur to plaintiff's evidence, nor did he file a motion for a directed verdict, but in view of defendant's contention, we deem it necessary to set out in substance the evidence of both parties.

Plaintiff's evidence, in substance, was that he was engaged in the automobile business in Oklahoma City selling Packard automobiles, under the trade name of Eisele Motor Company; that, on June 8, 1926, defendant, in company with Ed. M. Semans, came to his place of business, and asked him if he had anything in a good used sedan or car that plaintiff could let them have for campaign purposes; that they thought he should let them have a car for the advertisement and prestige it would give him; that he told them he was not interested in politics nor campaigning, and could not let them have a car that way; they then proposed to buy a car, but would not put more than $1,500 in it; that he told them he did not have a used sedan on hand at that time; but told them of two he had coming in, in a few days, on deals that he had made; that he had traded for one of these at around $2,-500, and the other at $1,340; that the higher priced one was one that had been taken in a trade from George Gorton at Cement, for $2,482, and the other car was one that he was trading for from W. E. Orney of Enid at $1,340; that he exhibited to them the written contracts with these parties showing the "trade in" price of each car; that he priced the Gorton car to them at $2,300 and the Orney car at $1,100; that they said they would wait and see them; that the next day defendant returned alone and told plaintiff that they had decided to take the $1,100 sedan if it was all right, but that they had to have a car that day to go somewhere in the southern part of the state; that defendant and Semans had spoken to him the day before about giving a note; that in the meantime he had inquired as to the financial standing of defendant and Semans, and had satisfied himself that either of them was financially responsible, and told defendant that he would let him have the touring car, here in question, to use until the next day, when he could bring it back and decide whether or not he would take the sedan, provided he would execute the note of $1,100 before taking the touring car, which defendant agreed to do; that a note for $1,100 due in six months was prepared by plaintiff, and delivered to defendant for execution; that he took the note to have it signed, and also took the touring car and drove it away: this was on the 9th; that he never gave defendant permission to use the touring car longer than the next day; that

he did not see defendant again until the next day when he came to plaintiff's place of business and demanded the delivery of the Gorton car for $1,100, claiming that he had contracted for the Gorton car for $1,-100; that plaintiff told him that that was impossible, that he could not let him have a car like that for $1,100; that he had never offered or agreed to sell the Gorton car for $1,100; that defendant insisted that he had bought the Gorton car for $1,100, and told plaintiff that he would keep the touring car until plaintiff did deliver the Gorton car; that plaintiff then told him that if he would return the touring car, he would forget all about the deal, and let it go; that defendant refused to do so, and that, on the 14th day of June, he filed the replevin action; that after the suit was filed, defendant again came to him and wanted to give him the note for $1,100, if plaintiff would deliver the Gorton car to him; that plaintiff declined to do so; that defendant had kept the touring car from the 9th day of June until the date of the trial, and that the reasonable market value thereof was $900, and that the usable value of the touring car was $6 per day. Several witnesses testified as to the usable value of the car, placing it from $5 to $10 per day. The testimony of both plaintiff and defendant shows conclusively that defendant did not pay any part of the purchase price of the automobile that he claimed to have bought, and that no contract or agreement of any kind, or any memorandum thereof in writing was signed by defendant, concerning the agreement, and that the only writing signed by either party was the note for $1,100.

The testimony of defendant is in direct conflict with that of plaintiff as to which car plaintiff agreed to sell to Parsons and Semans for $1,100. Both Parsons and Semans testified, in substance, that they were interested in the political campaign in 1926; that they went to plaintiff's place of business on June 8, 1926, with a view of buying an automobile for use in the campaign; that there was something said in a jocular way about Eisele letting them have a car for the campaign without charge; and that plaintiff smiled and told them he was in the automobile business to sell automobiles; that Parsons told plaintiff that he wanted a closed car because of the fact that the candidate who was going to ride in it wanted to keep away from the wind; that plaintiff said he believed he had a car that would suit them; that it was not then at his place of business; that it was one he had

traded for from a man by the name of Gorton at Cement, and that when plaintiff mentioned the name of Gorton, Parsons spoke up and said :"Well, I know that car, if that is the Packard car Mr. Gorton had, because I was down there the other day and got into it and looked at it." That plaintiff priced that car to them at $1,100; that Parsons then told plaintiff that they did not have the money, and that they would like to buy the car and give in exchange for it a note; that plaintiff said he would take the note, but the car was not there, but he would see at what time he could get the car and let them know that evening; that they went again about four o'clock that afternoon, and plaintiff informed them that the car was not there yet, and they went again the next morning at 10 o'clock, and plaintiff then told them he had sent for the car; that in these conversations Parsons had told plaintiff that he and Semans and Hubert L. Bolen would sign the note; that something was said to the effect that the parties might keep the car and use it until after the general election, when they could return it, and pay plaintiff $300 for the use of it, or pay the $1,100 note, and keep the car; that they made several trips to plaintiff's place of business that day to inquire whether the car was there, and that plaintiff finally told them he would get the Gorton car, and would let them have the touring car (the one in question here), to use until he could get the Gorton car; that the note was made and given Mr. Parsons to have it signed and the touring car was turned over to Parsons, and Parsons drove Semans to his office, and there turned the note over to Semans, and that Semans took and signed it, and left it with Mr. Bolen, and that Bolen signed it and returned it to Parsons, who signed and took it back to plaintiff, and offered it to him in return for the Gorton car, and that plaintiff refused to deliver the Gorton car, claiming that he had not agreed to sell them that car for $1,100; that if he mentioned the Gorton car at a price of $1,100 he meant the Orney car from Enid. Semans, however, was not present, and did not testify as to what took place on this occasion. Both Semans and Parsons were positive that plaintiff never mentioned the Orney car to them in their negotiations, and that he never exhibited to them either of the contracts he had for the trade for the Gorton and Orney cars; they both testified positively that plaintiff had agreed to let them use the touring car until he delivered the Gorton sedan.

The evidence was that the Gorton car was

a 1926 model Packard sedan, had been used about seven months, had been driven about 6,990 miles, and was in good condition; that, when new, sold for $3,080. The Orney car was a five-passenger Packard sedan, 1925 model, had been used for a little more than one year, was in good condition, and sold, when new, for $2,850. There was some conflict in the evidence as to the value of the touring car in controversy, and but little, if any, conflict as to the usable value thereof.

At the close of defendant's evidence, plaintiff demurred to defendant's evidence, in so far as it was sought to establish a sale of the Gorton car by the Eisele Motor Company to A. C. Parsons or A. C. Parsons and Ed. M. Semans, for the reason that the uncontradicted evidence showed that the consideration was in excess of $50, and that no part of the goods or chattels purchased was delivered, and no part of the purchase price paid. The trial court, in effect, held that the contract of sale of the Gorton car contended for by defendant was void, as being in violation of the statute of frauds, and there being no valid contract for the purchase of the other car, the defendant was therefore not entitled to retain possession of the touring car until plaintiff delivered the Gorton car, as contended for by defendant; and that after demand plaintiff was entitled to the possession of the automobile sued for, and announced his intention to instruct the jury along that line, and that the only question he intended to submit to the jury was the value of the automobile sued for, and the amount of damages sustained by plaintiff for its wrongful detention, whereupon plaintiff asked and obtained leave to amend his petition as heretofore stated. Defendant objected to the amendment, and then asked for a continuance on the grounds of surprise and inability to obtain witnesses to controvert plaintiff's claim for damages in the increased amount. The following proceedings were then had:

"By the Court: It is now 11:30 a. m., at the time this request is made. This hearing will be continued until 1:30 this afternoon, in order that the defendant may secure witnesses to introduce here bearing upon the question as to the rental value of the automobile during the period of its alleged unlawful detention by the defendant."

"Mr. Lydick: Comes now the defendant and says that it lacks 30 minutes of being the noon hour, it being 11:30; that these defendants are not acquainted with the men whom they might procure as witnesses as to the usable value of this car, and will not be able between now and 1:30 to obtain such testimony, and asks that this case go over past this day in order that he may obtain such witnesses, and says that, unless it is done, the defendant cannot meet that issue; that they are surprised at plaintiff asking for more than $100, the amount stated in their petition, and the defense announces they cannot use this time from 11:30 to 1:30; it will not be long enough."

"The Court: The court is of the opinion that there are innumerable automobile men, dealers in this city; the court is of the impression that the time given, which is two hours, would be ample to get witnesses here to testify upon that phase of the question.

"Mr. Lydick: The defendants offer to verify the statement which I have just made.

"The Court: All right, you may write it out and swear to it, and it will be filed here and considered as ruled on.

"Mr. Lydick: But if we cannot get longer than until 1:30, the regular hour of convening court, we feel that we do not care to try to use that time.

"The Court: Very well.

"Mr. Lydick: Note our exception to the refusal of the court to grant a longer time."

The defendant then requested the court to require the amendment to be made in writing, which the court did, and it appears that the time from then until 1:30 p. m. was taken up by defendant in reducing his application for continuance to writing, and by the plaintiff in reducing his amendment to writing. When court reconvened at 1:30, plaintiff presented and had filed his amendment to the petition, and defendant presented his verified application for continuance, which was overruled, and the court instructed the jury in accordance with his announced intention.

Defendant, under his first proposition, viz.: "The contract decisive of this case is one of bailment, and not one of sale, and is therefore not governed by the statute of frauds," says that the court erred in giving instruction No. 7, as follows:

"Under the law you will return a verdict in favor of the plaintiff and against the defendant for the possession of said car, or, in the alternative, the reasonable market value thereof at the date of said unlawful detention, said amount to be stated in your verdict; and, in addition thereto, the damages, if any, which plaintiff sustained by reason of said unlawful detention from the date of demand for the possession of said automobile to this date."

In his brief, defendant says:

"It is the theory of the defendant that this car passed into his possession with the consent of the plaintiff upon an oral contract; that the same might be retained by the defendant until the happening of a certain event, to wit, the delivery of the Gorton car at the purchase price of $1,100; that the possession of this Packard car was held by virtue of an oral agreement of bailment, or rental, and such contract is not required by the statute of frauds to be in writing."

Defendant reminds the court that he is not seeking to enforce his contract to purchase the Gorton car, and is not seeking damages for breach thereof, but insists that his agreement with plaintiff with reference to the possession of the car here in controversy (the touring car), is a contract of bailment, and that as a matter of law he was entitled to keep possession of the touring car until plaintiff delivers the Gorton car to him.

We think defendant is correct in his contention that his agreement with plaintiff with reference to the touring car was one of bailment. In this connection, however, it is to some extent necessary to consider the alleged contract of purchase of the sedan in order to determine what his rights were with reference to the touring car.

We think that, under defendant's own testimony, he did not have a valid contract for the purchase of either the Gorton or the Orney car. There is no contention but that the price of the car he did deal for was $1,100; there is no claim that any part of the purchase price was paid; there is no claim that the car he was dealing for was delivered to him, or that plaintiff signed any agreement or memorandum in writing whereby he was in any way bound to deliver either car to defendant. It cannot successfully be asserted that the transaction claimed by defendant is not within the statute of frauds. Defendant testified positively that he had an agreement with plaintiff for the purchase of the Gorton car for $1,100; that plaintiff's offer to sell it to him for $1,100 was made to and accepted by him, and was a complete agreement before anything whatever was said about allowing defendant to use the touring car, either for the one day as was claimed by plaintiff, or until the delivery of the Gorton car. as contended for by defendant. That was a separate agreement entered into after the agreement, if any, for the sale of the car. and. at most, was a mere contract for the loan of the touring car for an indefinite period. If his alleged contract of purchase of the Gorton car was void, and we think it was,

under the statute of frauds, then there was no contract whatever between the parties, except the one for the use of the touring car, which became, under defendant's evidence, a loan of the touring car for the sole benefit of defendant for an indefinite period. Every contract for the loan of personal property is in a sense a bailment. One of the classes of bailments is the gratuitous loan of goods to be temporarily used by the bailee and returned in specie. 6 C. J. 1099. This is termed a bailment for the sole benefit of the bailee. 6 C. J. 1101.

Section 5107, C. O. S. 1921, provides:

"A loan for use is a contract by which one gives to another the temporary possession and use of personal property, and the latter agrees to return the same thing to him at a future time without reward for its use."

Section 5117, C. O. S. 1921, so far as applicable here, provides:

"The lender of a thing for use may at any time require its return, even though he lent it for a specified time or purpose."

It would thus appear that plaintiff was entitled to a return of the touring car upon demand. In this case demand was made on June 10th, or, at latest, June 14th, when suit was filed. It clearly appears that the court did not err in giving the instructions complained of.

Defendant's second proposition is:

"Even if the contract decisive of this case is one of sale, nevertheless the court erred in giving instruction No. 6 and instruction No. 7."

Under this proposition defendant contends that the court erred in giving instruction No. 6, which is as follows:

"Under the law, an oral contract for the sale of such automobile for the alleged price of $1,100, without the payment at the same time of some part of the purchase money, is invalid, unless the same or some note or memorandum thereof be in writing and subscribed by the party to be charged, or by his agent: therefore, the alleged contract between the plaintiff and defendant for the purchase of said 'Gorton' car for $1,100 is invalid and unenforceable."

The objection raised to this instruction is, that the court erred in omitting that part of section 5034, C. O. S. 1921, which provides that an agreement for the sale of goods, chattels, or things in action, at a price of not less than $50, shall not be void where the buyer accepts or receives a part of such goods or chattels, or evidences of some of them. Many cases are cited holding that,

where the buyer accepts or receives any portion of the goods or chattels, either at the time the agreement is had, or at any time thereafter, while the proposition remains open, the agreement is thereby removed from the provision of the statute of frauds. As pointed out, there is no evidence in this case that defendant received or accepted the automobile which he contends he contracted for, or any part thereof, or any evidence thereof. It is contended, however, that the receipt of the touring car was a receipt of a part of the things contracted for, and was sufficient to remove the agreement from the statute of frauds. This contention cannot be upheld, since the evidence of defendant, and that of plaintiff, is uncontradicted, that the agreement for the use of the touring car was entirely separate from the agreement relative to the purchase of the sedan. Whatever agreement defendant had with reference to the purchase of the sedan was, under his own testimony, complete, before anything was said about the use of the touring car. There was no evidence under which the compliance with this part of the statute of frauds could have been properly submitted to the jury, and there was no error in the instruction as given.

The third proposition is that the court erred in permitting plaintiff to amend his petition by asking damages for the wrongful detention at the rate of $6 per day from June 14th to October 20th, and in overruling defendant's application for a continuance on account thereof. It is contended that the amendment was a substantial change of plaintiff's claim, and was therefore prohibited. Avery v. Jayhawker Gasoline Co., 101 Okla. 286, 225 Pac. 544, is cited as decisive on this point.

The first and second paragraphs of the syllabus in that case are:

"It is error for a court to allow a pleading to be amended so as to change substantially the claim or defense, and to render judgment thereon, in the absence of the adverse party, and without notice to him.

"The court is without jurisdiction to render judgment for a greater sum than that asked in the original petition, in the absence of notice to the defendant of an amendment by which a greater sum was asked."

The facts in that case are very different from the instant case. There no damages whatever were claimed in the original petition. The amendment was asked in the absence of and without notice to the defendants, seeking $11,000 damages, where none at all had been asked before.

In the body of the opinion, the court said:

"The amendment allowed in this case, changed substantially the claim of plaintiff. It permitted a recovery of damages in the sum of $11,000 for which no claim was made in the original petition and of which claim the defendant had no notice."

In the instant case, plaintiff had in his original petition claimed damages in the sum of $100 for the wrongful detention of the property involved. When the petition was filed, the property had been in the possession of defendant but five days. Plaintiff, in the very nature of things, could not ask for damages that had not then accrued. In the case cited, it was held that, where damages are claimed for the detention or depreciation and deterioration of property subsequent to the institution of the action, amendment is proper under section 323, C. O. S. 1921, which provides:

"Either party may be allowed, on notice, and on such terms, as to costs, as the court may prescribe, to file a supplemental petition, answer or reply, alleging facts material to the case, occurring after the former petition, answer or reply."

Here damages for detention only after the institution of the action were claimed by the amendment. Defendant was present at all times. No change whatever in the nature of plaintiff's claim was made by the amendment. Since defendant chose to give a redelivery bond, and retain possession of the property pending the action, he was certainly chargeable with notice that plaintiff's damage, if any, he sustained would be increased by the detention of the property pending the action, and should not be allowed to assert that he was surprised by the amendment. Defendant complains that he was not given sufficient time to obtain witnesses to meet plaintiff's increased demand for damages. The issue was the same, whether or not the amendment had been allowed. All that plaintiff was claiming was for the usable value of the automobile for the time it was detained. It was not necessary under amendment for defendant to secure a different character of evidence. The simple question of the usable value of the automobile per diem was the same, and we are of the opinion, as was the trial court, that defendant could have obtained witnesses qualified to testify on this question within the two hours given.

The fourth proposition is:

"The amount of damages allowed by the jury for the detention of the car are grossly excessive and obviously resulted from passion and prejudice."

Under this proposition, defendant urges that the amount of damages awarded is so out of proportion to the value of the property as to conclusively show that it is excessive. To this contention, we cannot agree. The value of the use of the property was for the jury to determine. All the evidence was that the usable value of the automobile in question was from $5 to $10 per day. Defendant was given opportunity to produce evidence to show that the usable value of the automobile was less than that shown by plaintiff's evidence. He did not see fit so to do, but apparently employed the time allowed him to produce his witnesses in preparing a showing for a continuance, and, under such circumstances, we are not able to say that the verdict was excessive.

The fifth and last proposition is that the verdict is contrary to law, because it awards damages for a greater period than that asked for in the pleadings. It is true that plaintiff, by his amended petition, asked for damages only from June 14th to October 20th, at the rate of $6 per day, a period of 128 days, which would amount to $768. The verdict was for $750, and recited that it is for damages for the detention of the automobile from the 9th day of June to the 9th day of November. There is some evidence tending to show that plaintiff demanded the return of the automobile on June 10th, though suit was not filed until June 14th.

The measure of damages for the wrongful detention of personal property, which has a distinct "usable value," is the usable value thereof during the time it was wrongfully detained. First State Bank of Mannsville v. Howell, 41 Okla. 216, 137 Pac. 657; Weleetka Light & Water Co. v. Castleberry, 42 Okla. 745, 142 Pac. 1006; 34 Cyc. 1562.

There being no substantial error in the record, the judgment should be affirmed.

TEEHEE, LEACH, HERR, and JEFFREY, Commissioners, concur.

By the Court: It is so ordered.

Note.—See under (1) anno. 4 A. L. R. 1224; 3 R. C. L. p. 114; 1 R. C. L. Supp. p. 771; 5 R. C. L. Supp. p. 157; 7 R. C. L. Supp. p. 79. See "Bailments," 6 C. J. §101, p. 1146, n. 8. "Damages," 17 C. J. §184, p. 878, n. 20; §465, p. 1122, n. 49. "Frauds, Statute of," 27 C. J. §234, p. 231, n. 62.