## INTERNATIONAL SUPPLY CO. v. BRYAN & EMERY, Inc.

No. 20774. Opinion Filed June 20, 1933.

Breckenridge & Bostick, for plaintiff in error.

G. C. Spillers, for defendant in error.

OSBORN, J. This action was instituted in the district court of Tulsa county by Bryan & Emery, Inc., as plaintiff, against the Internatonal Supply Company, a corporation, to recover damages for the breach of a written contract to drill a well for oil and gas in Logan county, plaintiff praying for damages in the sum of $125,000. From the allegations of the petition and from the contract, it appears that a well had already been drilled on said lands to a depth of ap-

proximately 4,500 feet, and that, under the terms of said written contract, the defendant agreed to deepen said hole to the Wilcox sand, or to a depth of approximately 6,000 feet.

The defendant pleaded as a defense misrepresentation of the condition of the hole to be deepened on the part of the plaintiff, acting through its president, and also mistake of fact, failure of consideration, and impossibility of performance. Briefly, the allegations of the defendant's answer are that a well had been drilled to a depth of 4,500 feet as a dry hole; that thereafter a well in the same vicinity came in at a depth of 6,000 feet, making large quantities of oil; that plaintiff induced defendant to enter into said written contract to deepen said hole to a depth of 6,000 feet; that plaintiff, through its president, represented to defendant that the well was a clean hole down to 4,500 feet, free from any artificial impediments such as steel or iron, and that said hole could be drilled to a depth of 6,000 feet; that defendant did not know the true condition of the hole, but relied upon plaintiff's representations, and by reason thereof signed the contract; that defendant, after the execution of said deepening contract, employed one C. H. Hubbard to deepen said hole; that said representations by the plaintiff as to the condition of said hole were false, in that, in the drilling of said 4,500-foot hole, certain bailers had been lost in the hole and pushed aside, or partly drilled up, and that although defendant, through its agent, Hubbard, had attempted for a period of about four months by every known means to clean out the 4,500-foot hole so that he could deepen same to a depth of 6,000 feet, and at an expense to defendant of $20,000, which it was required to pay to the said Hubbard for his efforts in that behalf, the impediments existing in said hole, known to plaintiff but unknown to defendant, made the deepening of said hole utterly impossible. Although said allegations were made defensively as an answer to plaintiff's petition, defendant's prayer is:

"Wherefore, defendant prays that the instrument marked exhibit 'A' be canceled and set aside and for naught held; that the plaintiff herein take nothing by reason of its suit against the defendant herein upon said exhibit 'A', and that the defendant be awarded its costs in this behalf expended."

As a further defense defendant pleaded failure of consideration, the allegations of which we deem unnecessary to set forth in detail. The prayer thereto is as follows:

"Wherefore, the defendant says that the plaintiff should take nothing by reason of its suit herein, and that the defendant should be awarded its costs in this behalf expended."

Defendant then, by cross-petition, reiterated the allegations of false representations by plaintiff in inducing the execution of the contract as hereinabove set forth, alleged the efforts of defendant through the said Hubbard to deepen said well, the impossibility of performance, the expenditure of $20,000 for such efforts, and further alleged:

"Defendant says that C. H. Hubbard consumed more than four months in an attempt to deepen said well and defendant herein was compelled to pay C. H. Hubbard $20,000 for his services in such attempt, and that all the aforesaid money paid out to the said C. H. Hubbard was incurred and caused by the statements of the plaintiff herein, and but for which statements the defendant never would have executed exhibit 'A' or its contract with C. H. Hubbard for the deepening of said well in which the guarantee to the said C. H. Hubbard, that said well was free and clean of any foreign substances whatever was made."

The prayer of said cross-petition is as follows:

"Wherefore, defendant prays that said exhibit 'A' be set aside and canceled and for naught held, and that defendant herein be awarded judgment against plaintiff herein in the sum of $20,000 paid to the aforesaid C. H. Hubbard, as herein above set forth, and for its costs in this behalf expended."

Thereafter the plaintiff filed an amendment to petition, in which plaintiff alleged that defendant, through its agent, lost a rotary drill bit and part of a rotary drill-stem in said well, thereby rendering the hole worthless and that defendant had plugged and abandoned the same, to the total loss of plaintiff of said hole, and plaintiff prayed judgment as in its original petition.

Defendant filed an answer to said amendment to petition, in which it said: "* * * and in addition to the allegations of its amended answer heretofore filed in this cause", the other allegations being a general denial, impossibility of performance, and denying any negligence on the part of the said Hubbard, ending with the following prayer:

"Wherefore, defendant having fully answered, asks that the said plaintiff's cause of action as against it be dismissed and that the defendant herein recover its damages as alleged in its cross-petition."

The record in this case is very voluminous, the parties having introduced many witnesses in an effort to substantiate their

respective contentions. After a demurrer to the evidence of plaintiff had been overruled, the defendant introduced its evidence under the allegations of its answer and cross-petition and thereupon a demurrer to defendant's evidence was overruled. Plaintiff thereupon introduced much evidence in rebuttal, but without closing the evidence in rebuttal, the court, after argument of counsel, concluded that not only was the defense set up by the defendant an equitable defense, but that the defendant, by its cross-petition, had asked for affirmative equitable relief—rescission and cancellation of the contract—and concluded said action had been converted by the defendant by reason thereof into an equitable action. The trial court thereupon sustained plaintiff's demurrer to the evidence of defendant, stating at the time that he was weighing the evidence as of the closing of defendant's evidence, and that defendant's evidence did not warrant any equitable relief. The trial court thereupon withdrew the defendant's cross-petition and defense from the jury, and submitted to the jury only the question of amount of plaintiff's recovery. The jury thereupon returned a verdict in favor of plaintiff for the sum of $100,000, on which the court rendered judgment, from which judgment appeal has been perfected by petition in error and case-made.

Many alleged errors are presented for review. But the determinative question relates to the action of the court in failing to submit to the jury the matters arising under defendant's defense and cross-petition. It is conceded by counsel for plaintiff that, unless said cause was converted into an equitable proceeding, the court, by reason of the conflicting evidence on the various matters under consideration, should have submitted same to the jury for determination.

To support the judgment of the trial court, plaintiff relies upon the rule announced in the case of Mathews v. Sniggs, 75 Okla. 108, 182 P. 703, wherein the court used the following language:

"The right to trial by jury in an action at law in which an equitable defense is interposed depends on whether the effect of such defense is to convert the action into an equitable suit. There is, as heretofore observed, a distinction between an equitable defense set up merely for a strictly defensive purpose and an equitable defense interposed for the purpose of securing affirmative equitable relief. The former does not change the mode of trial in an action at law; the latter, constituting in itself a cause of action, is to be tried in the same manner as if it had been instituted as a separate suit. And so where the defendant's allegations amount to a cross-action or counterclaim, on which, but for the statute authorizing equitable defenses and cross-actions, he would have to maintain a separate suit in equity for affirmative relief, such cross-action is treated like any other suit in equity, and issues arising thereon are triable by the court."

In addition plaintiff cites the following: 35 C. J. 174; 16 R. C. L. 213; Nolan v. Pacific Warehouse, 67 Wash. 173, 121 P. 451, Ann. Cas. 1913 D, 168; Maas v. Dunmeyer, 21 Okla. 434, 96 P. 591; Moschos v. Bayless, 126 Okla. 25, 258 P. 263; Ambrose v. Province, 150 Okla. 120, 300 P. 758; Moore v. Stanton, 77 Okla. 41, 186 P. 466; Sierzek v. Smith, 86 Okla. 79, 206 P. 611; Harjo v. Chilcoat, 146 Okla. 62, 294 P. 119.

Plaintiff's contentions, which were adopted and acted upon by the trial court in the rendition of the judgment, are well stated in the brief of plaintiff as follows:

"The plaintiff, affirming the contract, sued for damages for the failure to drill the well in accordance with the terms of the contract. The defendant, disaffirming the contract, alleged that the same was unenforceable for the reason that it was procured by fraud, entered into by mistake, and was impossible of performance. Every ground which was set up as a basis for relief it sought was equitable in its nature and after setting up these equitable defenses, it specifically in its answer and cross-petition prayed for affirmative equitable relief in seeking a cancellation or rescission of the contract. We need cite no cases to this honorable body to show that a rescission or cancellation of an instrument is relief which only a court of equity can give. This is so well established that it must be admitted by the defendant in this case. If it sought such relief and if it was entitled to such relief, then the plaintiff could not prevail in the premises. Consequently the primary issue before the court when the case was called for trial was to determine not whether the plaintiff was entitled to damages for the breach of the contract sued upon, but whether the defendant was entitled to a cancellation of the contract, because if the defendant prevailed in his prayer for cancellation there would be no contract upon which the plaintiff's cause of action would be based."

The rule contended for by plaintiff is widely recognized, and has been frequently applied by this court. We reaffirm the rule as announced in the above cases.

But whether said rule should be applied in this case will require further consideration of the record, the conduct of the parties, and other principles of law likewise

well recognized and oft-repeated. It will be noted that the contract on which plaintiff founded its suit had been completely abandoned by the defendant, and the hole which it had agreed to deepen had been effectively plugged. The plaintiff filed an action for damages claiming as a measure of its damages the total cost of reproducing said hole. While defendant in one of its defenses, as well as in a cross-petition, prayed that the contract be canceled and held for naught, in addition to a prayer for damages of $20,000 contained in its cross-petition, the plaintiff, after said pleadings, filed an amendment to petition, charging negligence on the part of defendant, and its agent, in attempting to deepen said hole. Defendant, answering said amendment, adopted all of the allegations of his previous answer, and prayed that plaintiff take nothing "* * * and that the defendant herein recover its damages as alleged in its cross-petition."

The cause was set for trial on the docket of the court at which a jury was present; there was no claim of plaintiff prior to trial that same was an equitable proceeding; there was no claim that either of the parties was not as a matter of right entitled to a trial by jury: the plaintiff took the burden of opening and closing the case, and at no time in its opening statement did plaintiff allude to the claim of defendant for rescission and cancellation of said contract, nor that such issue was the first and primary issue for determination. which would preclude the recovery by plaintiff of any damages for the breach of said contract. In the statement of counsel for defendant, which was extremely, and perhaps unduly, lengthy, no claim was made by him that rescisison and cancellation constituted an issue for determination either by the court or jury. Alluding to defendant's cross-petition. the record discloses the following took place during the opening statement of counsel for defendant:

"Mr. Breckinridge: We have a cross-petition here in which we are asking, I have forgotten what. I think $25,000 or $30,000. The Court: $20,000. Mr. Breckinridge: We had to pay, as we will show you, Mr. Hubbard $20,000 for the work he did there, which was a total loss, and we expect gentlemen of the jury, if you find from a preponderance of the evidence that Mr. Bryan knew of these conditions or of this stuff in this hole, that these bailers had been drilled up and he did not tell us about it, and purposely refrained from telling us about it, and we entered into this contract and we found out afterwards it was not as represented and we lost $20,000, a judgment at your hands, giving us $20,000 for the cost and labor which we were put to in trying to deepen this well under the circumstances, that were not properly represented to us."

The court several times during the trial, while the evidence was being introduced, expressed an intention to submit said cause to the jury for determination. It is apparent that the parties and the court treated said cause as a legal, as distinguished from an equitable, action, until, upon request of plaintiff, the jury was withdrawn during the introduction of the rebuttal testimony of plaintiff, whereupon the court determined that the issues were equitable, and the trial abruptly ended by taking away the defense of defendant, and by an instructed verdict in favor of plaintiff, the amount only to be determined by the jury. Although the evidence was highly conflicting in many respects, the court weighed the evidence as of the time plaintiff interposed a demurrer to defendant's evidence, and, upon the weight of the evidence, sitting as a chancellor in equity, determined the weight thereof to be against defendant, and judgment was accordingly rendered in favor of plaintiff.

In determining the nature of the proceedings, this court can examine not only the pleadings, but also the acts and conduct of the parties and of the trial court. In the case of Burke v. Smith, 57 Okla. 196, 157 P. 51, it is said:

"Where the parties treat the action in the court below as one at law, on appeal, the case will be treated as one at law by the Supreme Court."

In the case of Western Silo Co. v. Cousins, 76 Okla. 154, 184 P. 92, it is said:

"Where plaintiff sues upon a promissory note. and the defendant's answer admits the execution of the note, and sets up as a defense thereto a breach of a contemporaneous parol agreement of a warranty of fitness, and prays that plaintiff take nothing and that the defendant recover damages and costs, and the case proceeds to trial upon the issues thus joined, and the court submits the cause to the jury, authorizing a recovery by the defendant upon the theory of a breach by the plaintiff of an implied warranty only of the thing sold by the plaintiff and the jury returns a verdict in favor of the defendant, held, that the defendant will not be permitted to urge in this court that the defense of the defendant was one for rescission under Rev. Laws Okla. 1910, secs. 984, 986, and where the answer of the defendant contains no allegation that there was an offer to rescind promptly and to restore to the plaintiff within a reasonable time the property in question."

146

See, also, Chicago, R. I. & P. Ry. Co. v. McBee, 45 Okla. 192, 145 P. 331; Brooks v. Tyner, 38 Okla. 271, 132 P. 683; Limerick v. Jefferson Life Insurance Company, 67 Okla. 178, 169 P. 1080.

We think it is unnecessary, however, to predicate the determination of this case upon the rule announced in the above cases, for the trial court, prior to the conclusion of the trial and at the request of plaintiff, concluded that the cause had been converted into an equitable action, and thereupon, over the objection of defendant, proceeded to attempt to apply equitable principles in the determination of the controversy.

We shall advert, therefore, to other indicia to determine the character of proceeding before the court.

It will be remembered that the contract had been completely abandoned by the defendant, and that plaintiff had instituted an action for breach of said contract seeking pecuniary damages only. The defendant answered with equitable defenses, and with a cross-petition seeking the recovery of pecuniary damages, and praying for cancellation and rescission of the contract. There could be no special reason for the court to be called upon in equity to rescind said agreement. The contract constituted no cloud upon the title of defendant to any property; it was not negotiable, and no reason can be advanced why a legal defense, or an affirmative legal action, would not give full and complete relief to said defendant. Under such circumstances, after a legal action has been filed on a contract, courts of equity will not grant, except under certain circumstances, relief by rescission or cancellation. In the case of Phoenix Mutual Life Insurance Co. v. Bailey, 13 Wall. 616, 20 L. Ed. 501, it is said:

"Where a party, if his theory of the controversy is correct, has a good defense at law to 'a purely legal demand', he should be left to that means of defense, as he has no occasion to resort to a court of equity for relief, unless he is prepared to allege and prove some special circumstances to show that he may suffer irreparable injury if he is denied preventive remedy. Nothing of the kind is to be apprehended in this case, as the contracts, embodied in the policies, are to pay certain definite sums of money, and the record shows that an action at law has been commenced by the insured to recover the amounts, and that the action is now pending in the court whose decree is under re-examination."

See, also, the following: Buzard v. Houston, 119 U. S. 347, 30 L. Ed. 451; Sunset Tel. & Tel. Co. v. Williams, 89 C. C. A. 281,

162 Fed. 301, 22 L. R. A. (N. S.), 374; Miller v. Kettenbach (Idaho) 109 P. 505, 138 Am. St. Rep. 192; Bank Sav. Life Insurance Co. v. Wood (Kan.) 253 P. 431; 9 C. J. 1162; Black on Rescission and Cancellation, vol. 2, sec. 648, p. 1488.

Applying the above announced rule to the facts in this case, it will be seen that the court was not authorized, even had the defendant specifically so urged, to grant equitable relief by rescission of the contract.

Moreover, it appears that the pleadings of defendant are inadequate for the granting of equitable relief in that there is no allegation therein that defendant, upon discovery of the alleged fraud, promptly rescinded said contract and offered to restore everything of value which had been agreed to be transferred as the consideration for said contract. These averments were essentials to the equitable proceeding of rescission. Section 9500, O. S. 1931; Western Silo Co. v. Cousins, 76 Okla. 154, 184 P. 92; Zufall v. Peyton, 26 Okla. 808, 110 P. 773; Herron v. Harbour, 57 Okla. 71, 155 P. 506; Carson v. Walker, 57 Okla. 182, 156 P. 1172; Duncan v. Keechi Oil & Gas Co., 75 Okla. 98, 181 P. 709; Muir v. Martin, 141 Okla. 181, 284 P. 290.

The prayer of the defendant in its cross-petition is used as the means of converting a cause of action, insufficiently stated, and in which the court could grant no equitable relief, from one at law to recover damages to one seeking rescission of the contract, notwithstanding the repeated protests of defendant, whose pleadings were involuntarily so construed by the court, after the trial of said cause had proceeded for several days. Generally the prayer of a pleading is immaterial. Fraley v. Wilkinson, 79 Okla. 21, 191 P. 156; Anderson v. Muhr, 36 Okla. 184, 128 P. 296. By the prayer of defendant in its pleading to the amendment to petition of plaintiff, defendant sought only to recover its damages as theretofore prayed. We think this act on the part of defendant's counsel, and the acts of counsel for plaintiff and the court, make the record clear that defendant waived and abandoned its previous prayers for the rescission of the contract, leaving the cause one at law in which equitable defenses were interposed by defendant, and in which defendant sought damages for the alleged misrepresentations of plaintiff. Unquestionably such defenses should have been submitted to the jury, and in taking said cause from the jury, the trial court erred. Gill v. Fixico, 77 Okla. 151, 187 P. 474; Baldridge v. Sun-

day, 73 Okla. 287, 176 P. 404; Dobbins v. Texas Co., 136 Okla. 40, 275 P. 643.

It would serve no useful purpose to analyze the conflicting evidence in this cause. If the contract was entered into under the belief of the defendant, induced by the misrepresentations of plaintiff, that the well was in good shape and drillable, and that it could have been successfully drilled to the 6,000-feet depth, and it later developed that the parties were mistaken as to the condition of the hole, or that plaintiff purposely misrepresented said condition, and by reason of such condition the well could not be drilled as contracted, such state of facts would constitute a complete defense to plaintiff's cause of action. Section 5001, O O. S. 1921 [O. S. 1931, sec. 9422]; Lovell v. Altus, 118 Okla. 106, 246 P. 468.

Defendant urges that the allegations of plaintiff's petition were insufficient to state a cause of action. This contention is based upon the theory that plaintiff was seeking to recover on a breach of an alleged contract to drill an original well to the depth of 6,000 feet; that the contract relied upon and attached to the petition as an exhibit provided for the drilling of the well from the depth of 4,500 feet to the lower depth of 6,000 feet; and that there was, therefore, a material variance between the exhibit and the allegations of the petition, and that by reason of such variance, defendant's demurrer to the petition should have been sustained. The trial court held that the contract did not provide for the drilling of an original well to the depth of 6,000 feet, but only for the deepening of the well already drilled, but held the allegations of the petition sufficient to plead a cause of action for the breach of the contract to drill the well to a lower depth. The petition is somewhat indefinite and uncertain as to the theory relied upon by plaintiff for recovery, but, as construed by the trial court, probably it was sufficient as against a general demurrer. However, as the case must be reversed on other grounds, we think that on retrial plaintiff should be required to amend its petition and present some definite and certain theory upon which it relies for recovery.

The judgment is reversed and the cause remanded for a new trial.

RILEY, C. J., CULLISON, V. C. J., and SWINDALL, ANDREWS, McNEILL, BAYLESS, and BUSBY, JJ., concur. WELCH, J., absent.