TAX/INVESTMENTS CONCEPTS, INC.,
an Oklahoma corporation, Appellee,

v.

Thomas McLAUGHLIN and Amanda
McLaughlin, Individuals, Appellants,

v.

FIDELITY AND DEPOSIT COMPANY
OF MARYLAND, Appellee.

No. 52466.

Supreme Court of Oklahoma.

Nov. 16, 1982.

Rehearing Denied Nov. 1, 1983.

Mort G. Welch, Abowitz & Welch, Oklahoma City, Holcomb, Holcomb & Harkins, Buffalo, for appellants.

Lawrence H. McMillin, Terry Askins, Oklahoma City, for appellee, Tax/Investments Concepts, Inc.

C. William Threlkeld, Fenton, Fenton, Smith, Reneau & Moon, Oklahoma City, for appellee, Fidelity and Deposit Company of Maryland.

LAVENDER, Justice:

For convenience, the appellants, Thomas and Amanda McLaughlin, will be referred to as the McLaughlins or appellants. Appellee, Tax/Investments Concepts, Inc., will be referred to as TIC or appellee. Fidelity and Deposit Company of Maryland will be referred to as Fidelity or surety.

TIC filed suit against the McLaughlins to recover the unpaid balance on a promissory note executed by McLaughlins to TIC on November 17, 1975, in the principal sum of $8500, with interest at the rate of 15% per year, and for possession of certain personal property of the McLaughlins pledged as security for the loan evidenced by the note. McLaughlins admitted executing the note but asserted the loan obligation was void and unenforceable against them because the loan was a "supervised loan" within the meaning of 14A O.S.1971, § 3–501(1), made by a corporation, TIC, which did not have legal authority to make supervised loans and that TIC failed to comply with disclosure requirements of the Oklahoma Uniform Consumer Credit Code (UCCC). TIC does not seriously contend that it was qualified to make a "supervised loan," or that it complied with the disclosure requirements of UCCC, but rather asserts that the loan was not a "consumer loan" within the meaning of 14A O.S.1971, § 3–104 in that it was not incurred *primarily* "for a personal, family, household or agricultural purpose" and thus does not fall within the purview of the Oklahoma Uniform Consumer Credit Code (UCCC). Therefore, TIC maintains that since McLaughlins' defense to its action and McLaughlins' counter-claim for relief by reason of TIC's failure to comply with UCCC are predicated upon the indebtedness being a "consumer loan," the findings and judgment of the trial court must be sustained.

■ Our first consideration is to determine the gravamen of the petition and counter-claim, whether it be in law or in equity. If the action be at law, the findings of the trial court are as binding on appeal as the verdict of a jury and, consequently, if there is any competent evidence to support the findings, they will not be disturbed on appeal.[1]

■ TIC's petition is for judgment on a note and for possession of personal property in which it claims a security interest. The first cause of action of McLaughlins' counter-claim is for relief under UCCC; the second cause of action is against Fidelity for recovery upon its attachment bond; and the third for damages against TIC for wrongful attachment. These are actions at law, triable to a jury.[2]

We next turn to the issue of whether there is any competent evidence in the record to support the finding of the trial court that the loan in question was not a "consumer loan" in that it was not "incurred primarily for a personal, family, household or agricultural purpose" and therefore outside the protection of UCCC.

Merriam-Webster's New Collegiate Dictionary defines the word "primarily" as being an adverb meaning "for the most part; chiefly." Our area for judicial review is then directed toward whether there is any competent evidence in the record before us that the McLaughlins' loan was incurred for the most part, or chiefly, for a business or commercial purpose as distinguished from a personal, family, or household purpose,

there being no claim that the loan was for an agricultural purpose.[3]

A perusal of the record convinces us that there is more than sufficient competent evidence to support the findings of the court below, some of which is as follows: Thomas McLaughlin, one of the defendants (the other defendant is his wife), who was trained and qualified as a physicians' assistant and who had served as such both in Alaska and in his home state of Maryland, contacted an employee of Corporate Recruiters, Inc., an employment agency, concerning possible employment in Oklahoma as a physicians' assistant in Oklahoma, and was placed in contact with two osteopaths in Jenks, Oklahoma, by whom he was subsequently employed as a physicians' assistant. Corporate Recruiters, Inc. advanced McLaughlin the sum of $500 to enable him to move to his Oklahoma employment site. Shortly thereafter, TIC advanced the sum of $3500 to the McLaughlins, taking their note secured by personal property consisting of a piano, washer and dryer, refrigerator, furniture, woodworking tools, a lawn mower, and two automobiles. The proceeds from this loan were disbursed to various of the McLaughlins' creditors for such things as moving expenses, repayment of Corporate Recruiters, Inc. for its loan, payment of various debts, and the balance of the proceeds going to McLaughlin directly for living expenses. After a few weeks, McLaughlin's employment in Jenks was terminated. Again with the help of Corporate Recruiters, Inc. McLaughlin was able to obtain employment as a physicians' assistant with a doctor in Laverne, Oklahoma.

(1) the debtor is a person other than an organization;
(2) the debt is incurred primarily for a personal, family, household, or agricultural purpose;
(3) either the debt is payable in installments or a loan finance charge is made; and
(4) either the principal does not exceed Twenty-five Thousand Dollars ($25,000.00) or the debt is secured by an interest in land. In order to be a "consumer loan" within the terms of UCCC, the loan must meet all the criteria set forth in §§ 3–104, 3–105. *Barnes v. Helfenbein,* Okl. 548 P.2d 1014 (1976).

---

1. *Pracht v. Oklahoma State Bank,* Okl., 592 P.2d 976 (1979); *State ex rel. Department of Highways v. Sharpensteen,* Okl., 538 P.2d 1044 (1975).

2. 12 O.S.1981, § 556, *State v. Wm. Cameron & Co.,* 147 Okl. 1, 294 P. 104; *International Supply Co. v. Bryan & Emery,* 164 Okl. 142, 23 P.2d 205.

3. Section 3–104 states:
Except with respect to a loan primarily secured by an interest in land, "consumer loan" is a loan made by a person regularly engaged in the business of making loans in which

On November 17, 1975, the McLaughlins executed and delivered to TIC the note sued upon in this case, again collateralizing the same with the same personal property. The loan agreement discloses how the loan proceeds were to be used: to repay two doctor employers for living expenses advanced to McLaughlin in anticipation of fees he would earn, for living and moving expenses in connection with the change of employment and residence from Jenks to Laverne, and to repay the two prior loans with interest.

McLaughlin formed a professional corporation under the laws of the State of Oklahoma some time after executing the first note, but all loan transactions were with the McLaughlins individually. In connection with McLaughlin's employment, he was engaged as an independent contractor in his professional capacity and paid accordingly.

■ While under the evidence the loan transaction and the factual circumstances preceding it have some of the characteristics of personal, family, and household financing, the pervading purpose and motivation surrounding each loan, including the loan upon which suit here had been brought, was to finance Thomas McLaughlin in the establishment of his business and profession as a physicians' assistant, and only incidentally to provide family living expenses, and to consolidate his debt payments. A substantial portion of the loan went to pay for his moving expenses to his new employments and to pay for the services of the employment agency which secured the professional placement prospects. We therefore hold that there is competent evidence in the record sufficient to support the findings of the trial court that the note was not governed by the provisions of the UCCC.

McLaughlins next urge error on the part of the trial judge in awarding to TIC possession of the McLaughlin personal property in which TIC had a security interest as a part of the judgment in TIC's foreclosure suit, for the reason that TIC, having previously in another lawsuit obtained an attach-

ment order and having actually levied upon the collateral because of said attachment, waived its contractually created security in the attached property. In support of its position, McLaughlins cite *Rooney v. McPherson,* 38 Okl. 410, 133 P. 212 (1913), *Evans v. McMillan,* 111 Okl. 253, 239 P. 449 (1925), *Crismon v. Barse Livestock Commission Co.,* 17 Okl. 117, 87 P. 876 (1906), *Boston & Kansas City Cattle Loan Co. v. Dickson,* 11 Okl. 680, 69 P. 889 (1902), and *Doughty v. Laubach,* 172 Okl. 42, 44 P.2d 105 (1935).

■ Whatever may have been the law in this respect prior to the enactment of the Uniform Commercial Code, the UCC (12A O.S.Laws 1961, § 9–501) clearly provides that the act of the secured party in levying or executing on the collateral does not waive the contractual security interest provided for in the note and loan agreement.[4]

The trial judge found and determined that TIC procured an attachment order and seizure of McLaughlins' personal property which were wrongful. No appeal was taken from the trial court's finding and determination. The McLaughlins do complain and appeal from the lower court's finding that there was no proof of any element of damage sustained by McLaughlins as a result of the wrongful attachment except for attorneys fees and costs incurred to discharge the attachment, and in the trial court's award of nominal damages of $1 to McLaughlins, together with attorney fees and costs incurred to discharge the attachment. Punitive damages of $500 were also awarded to the McLaughlins.

■ The McLaughlins' claim for damages to personal property by reason of TIC's wrongful attachment of the same (except for alleged damages to a piano) was one for wrongful detention of the personal property during the approximately three months that they were deprived of the use of their property. The measure of damages for the detention only of personal property having a distinct usable value is the usable value thereof for the time it was wrongful-

---

4. 69 Am.Jur. *Secured Transactions,* § 549.

ly detained.[5] However, a person deprived of the use of property by its having been wrongfully attached cannot recover the value of such use without proof of the value, and neither can he recover where the value of the use is purely speculative.[6]

■ In the case at bar, the McLaughlins' evidence as to damages for deprivation of a washing machine, refrigerator, television, and two automobiles was limited to the cost of replacement; hence, there was no evidence as to its usable value before the court. Mrs. McLaughlin testified that there was damage to a piano in that a piece was torn out of one of the corners of the instrument and that there was a crack across the back. But the only evidence adduced as to monetary damage was her statement when asked if she had any idea how much it cost to repair it, was "I believe the man when he tuned it said it would be about $300.00, if it could be." Such evidence is too speculative and conjectural to justify an award of damages.[7]

■ The court below awarded to the McLaughlins a judgment for attorney fees incurred in connection with their successful action to set aside the wrongful attachment by TIC of their personal property. McLaughlins contend on appeal that the trial court erred in not allowing attorney fees for defense of the main action out of which the attachment order was issued, their theory being that if they succeed in establishing that there was no enforceable underlying debt owed by them, the defense of the entire action is an integral part of setting aside the attachment, and attorney fees should be awarded for the defense of the entire suit. However, in light of the fact that we have heretofore determined that the underlying debt is valid and enforceable, the trial court correctly held that recovery of attorney fees must be limited to those incurred in getting the wrongful attachment set aside. It is where the attachment can be defeated only by defeating the main action that attorney fees can be allowed for defense of the main action as damages.[8]

The McLaughlins acknowledge the trial judge's finding in their favor on the third cause of action in their cross-complaint under 42 U.S.C. § 1983, but complain that the award was inadequate. The finding of the trial court is in the following language:

"Court further finds that the constitutional rights of these Defendants were violated in that due process of law was not followed; that the question of damages in this regard is difficult to determine from the evidence; however, the Court will award the Defendants the combined sum of $200.00 for damages by reason of this element."

We hold that a review of the record reveals competent evidence to support such a finding.

The findings and determinations heretofore made make it unnecessary to consider other assignments of error urged by appellants.

AFFIRMED.

IRWIN, C.J., BARNES, V.C.J., and HODGES, and HARGRAVE, JJ., concur.

SIMMS, DOOLIN, OPALA and WILSON, JJ., dissent.

SIMMS, Justice, dissenting:

I must respectfully dissent to the majority's determination that the loans in question were made for commercial purposes. I believe the evidence clearly shows that the loans were "primarily for a personal, family, [and] household purpose" as required by 14A O.S.1971, § 3–104(2).

**5.** *Parsons v. Eisele,* 137 Okl. 35, 277 P. 643; *Stumpf v. Pederson,* 180 Okl. 408, 70 P.2d 101; 6 Am.Jur.2d *Attachment and Garnishment,* § 624; 45 A.L.R.2d 1221 (1222).

**6.** *Stumpf v. Pederson, supra;* 6 Am.Jur.2d § 624, *supra;* 45 A.L.R.2d 1221 (1226).

**7.** *Stumpf v. Pederson, supra.*

**8.** *First Nat. Bank of Taloga v. Salisbury,* 146 Okl. 6, 292 P. 1113; *Central Oil & Drilling Co. v. Wilson,* 191 Okl. 91, 127 P.2d 162; 65 A.L.R.2d 1433 (1436); 6 Am.Jur.2d *Attachment and Garnishment,* § 631.

The loan proceeds were used by the McLaughlins for their intended and stated purposes: paying off existing consumer loans; paying the moving expenses of the family and paying for the family's living expenses.

In my opinion the majority places far too much emphasis on the circumstances surrounding the need for loans to the exclusion of examining the purpose of the loans. The fact that the McLaughlins' necessity for the loans arose from previous financial difficulty and an attempt to start a new life does not transform the purpose of the loan from being primarily for their personal, family and household expenses.

Mr. McLaughlin was attempting to start a new career at the time the loans were made, however the loans were *not* for a professional or commercial purpose such as purchasing professional instruments, equipment or inventory or furnishing his office. Compare: *Farmers State Bank of Oakley v. Cooper,* 227 Kan. 547, 608 P.2d 929 (1980); *Hall v. Owen Cty. State Bank,* Ind.App., 370 N.E.2d 918 (1977). As to commercial purposes, see also, *Barnes v. Helfenbein,* Okl., 548 P.2d 1014 (1976), *and Nat. Interstate Life Ins. Co. v. Thomas,* Okl., 630 P.2d 779, 782 (1981).

The loan in question was for $8500. The amount of the employment agency debt was $500. Assuming for argument that this portion of the indebtedness was for a clearly commercial purpose, the loan was nonetheless for consumer purposes. The UCCC does not require that the entire loan be for personal, family or household expenses only that it be *primarily* for those purposes.[1]

If we decide whether a loan is a "consumer" loan within the UCCC by limited inquiry into only the surrounding financial circumstances of the debtor, rather than looking at the purpose of the loan, we will

exclude from coverage many of those loans which the Act was intended to cover.

It seems to me common knowledge that consumer loans are needed more frequently by people whose business/commercial ventures have failed than by those whose ventures are successful.

This judgment should be reversed and the loan declared void pursuant to the direction of 14A O.S.1971, §§ 5–202(2), 3–502.

I am authorized to state that Justice Doolin, Justice Opala, and Justice Wilson join with me in this dissent.

---

1. The following cases discuss this issue in regard to the identical definition of "consumer credit" in the federal Truth in Lending Act, 15 U.S.C. § 1601; *Gallegos v. Stokes,* 593 F.2d 372 (10th Cir.1979), 54 A.L.R.Fed. 485; *Tower v.* *Moss,* 625 F.2d 1161 (5th Cir.1980); *Smith v. Chapman,* 436 F.Supp. 58 (WD Tex.1977); *Toy Natl. Bank v. McGarr,* Iowa, 286 N.W.2d 376 (1979).