**MARYLAND CASUALTY COMPANY,
a Corporation, Plaintiff in Error,**

v.

**Frank WILLSEY, Defendant in Error.**

No. 39769.

Supreme Court of Oklahoma.

Jan. 15, 1963.

Rehearing Denied April 2, 1963.

Covington & Gibbon, by A. M. Covington, Tulsa, for plaintiff in error.

Wilkerson & Wilkerson, Pryor, Sanders & McElroy, Tulsa, for defendant in error.

BLACKBIRD, Chief Justice.

The broad issue in this case is whether or not plaintiff in error, sometimes hereinafter referred to merely as "Casualty", is liable to defendant in error, Frank Willsey, under the terms of a manufacturer's and contractor's liability policy, which Casualty issued to said insured, to become effective February 7, 1957.

During the last part of the first half of 1957, Willsey was the sub-contractor under one L. C. Ferguson, the general building contractor, in the performance of the latter's contract with the U. S. Corps of Engineers, to construct an addition to an existing building on the grounds of the Oklahoma Ordnance Works, near Pryor, Oklahoma.

Under his sub-contract with Ferguson, Willsey's part of the project was to make the electrical installations (furnishing materials as well as labor) in the building addition.

A fire occurred in the new addition on June 11, 1957. Inasmuch as the U. S. Corps of Engineers had not, on or before that date, accepted the new addition and discharged Ferguson as having completed the project, it required him to rebuild the burned-out portion thereof. Accordingly, Ferguson, who had not paid Willsey for all of his work under the original sub-contract, entered into a second contract with him for the electrical installations involved in restoring the burned portion of the building addition.

Thereafter, when in 1958, Ferguson had failed, and/or refused to pay Willsey the balance due him under the two aforesaid contracts, Willsey, as plaintiff therein, instituted civil cause No. 4494, in the United States District Court For The Northern District of Oklahoma, against Ferguson and his surety as defendants, to collect said balance.

In an answer said defendants filed in said federal court action it was alleged, inter alia, that there was no balance due and owing Willsey under the original sub-contract, because of the off-set described in an accompanying "Cross-Complaint", in which it was alleged, inter alia, as follows:

"IV.

"Defendant further alleges that the fire which occurred on June 11, 1957 was directly and proximately caused by the negligence and want of care of the plaintiff, Frank Willsey, his agents, servants and employees, in that the plaintiff, Frank Willsey, *while performing his subcontract with the defendant*

herein, grounded the metal armor surrounding the BX cable and/or the metal receptacle box to the positive conductor of the cable. That said metal receptacle box was located on the south wall of Building 719–1. That this condition resulted from damage to the insulation surrounding the conductor or improper installation of the electrical receptacle, and *occurred during the replacing of a 3-pole polarized 2-wire* BX cable system. That installation of the above receptacle was made in a manner contrary to the National Electrical Code and the standards of the National Board of Fire Underwriters.

### "V.

"That *as a result of the negligent installation of the receptacle* set forth above a fire occurred which caused substantial damage to the premises under the control and custody of the defendant, L. C. Ferguson, and as a result, defendant, at considerable expense, to-wit: $18,248.71, had to repair the damage to Building 719–1, which was *directly and proximately* caused by the negligence of defendant's subcontractor, Frank Willsey, the plaintiff herein.

### "VI.

"Defendant further alleges that plaintiff, as a bonded and licensed electrician, owed a duty to the defendant to perform his contract in a proper and workmanlike manner and to conform to the standards of the electrical industry, to-wit: The National Electrical Code and the National Board of Fire Underwriters. However, to the contrary, the plaintiff, *by his negligent and faulty work,* as set forth in Paragraph IV above, breached said duty, thereby directly and proximately causing the fire and resulting damage which caused defendant to substantially re-perform, at great expense, his contract with the U. S. Corps of Engineers, and in addition, repair the fire damage to the

areas outside the scope of the original contract.

### "VII.

"Defendant further alleges that it was necessary for him to expend considerable time and effort in performing the above contract and that the reasonable expense for defendant's time and service amount to the sum of $2500.00, and said sum constitutes a further item of damage in addition to the $18,248.71 referred to above. Therefore, defendant's total damages amount to the sum of $20,748.71. That defendant was reimbursed by his insurance carrier for the fire which occurred on June 11, 1957, in the sum of $10,200.00, which was the sum due under Builder's Risk Policy No. OC–751530 and Binder No. 9416, leaving a total amount of defendant's damage at $10,548.71, less a credit due plaintiff on Exhibit 'C' of $2,912.-00, and that defendant has made demand on plaintiff for the sum of $7,636.-71 *by reason of plaintiff's* negligent acts, and that plaintiff has refused to pay said amount.

"Wherefore, premises considered, defendant prays that he recover damages from the plaintiff, Frank Willsey, in the sum of $7,636.71, with interest thereon at the rate of 6% from dage of judgment until fully paid, and for costs and for such other and further relief to which defendant may be entitled." (Emphasis ours.)

When the above-described development occurred in the federal court cause No. 4494, Willsey called upon Casualty to undertake his defense against the above-quoted Cross-Complaint, under the "Public Liability" portion of the subject policy, which bound Casualty, as insurer, to pay on behalf of Willsey, as the insured: " * * * all sums which the insured shall become legally obligated to pay because of injury to or destruction of property * * * caused by * * * accident *and arising out of the hazard hereinafter defined."* (Emphasis ours.)

In "Division 1" of the portion of the policy describing the "hazards" which it covers, the policy reads: "The ownership or use of premises, and all operations * * *"; but the premium that Willsey paid on the policy did not include the hazard of accidents to "Completed Operations", described in the policy's "Division 4" as those occurring after the insured's operations were completed and abandoned (with the proviso that " * * * operations shall not be deemed incomplete because improperly or defectively performed or because further operations may be required pursuant to an agreement * * *").

It was on the ground that Willsey's coverage did not extend to "Completed Operations" that Casualty notified him by letter of June 10, 1958, that it would not undertake to defend him against Ferguson's Cross-Complaint in Cause No. 4494, supra, and that it would not be responsible for the payment of any judgment entered against him arising out of the adove-described "occurrence."

One week later, on June 17th, Willsey filed a pleading in the federal court case entitled " * * * Answer To Defendant's Cross Complaint" in which he denied, inter alia, the allegations of certain paragraphs of Ferguson's and his surety's Cross-Complaint, including the above-quoted paragraph "IV", and by an amendment of said Answer (subsequently filed) Willsey also alleged, among other things, that he was not liable for the damages from the fire, because, under his contract with Ferguson, he was exonerated from liability for damages from accidents beyond his (Willsey's) control.

According to uncontradicted representations made herein, the jury in the federal cause No. 4494, supra, found that the fire did not result from any negligence on Willsey's part, and, by the judgment entered therein, plaintiff was exonerated from liability to Ferguson on the Cross-Complaint, supra.

In February, 1960, Willsey, usually hereinafter referred to as plaintiff, commenced the present action against Casualty, usually hereinafter referred to as defendant, to recover, under the above-described policy, the sum of $2,399.92, as his costs and expenses of defending himself against the above-described Cross-Complaint in the federal cause No. 4494, supra. After waiver of a jury and a trial, during which defendant introduced no evidence, judgment was rendered for plaintiff in the sum of $2,-299.92, with interest.

█ The first "PROPOSITION" defendant advances for reversal of the trial court's judgment is:

"THERE IS NO COVERAGE PROVIDED FOR DAMAGES OR EXPENSES ARISING OUT OF THIS FIRE AFTER THE INSURED HAD COMPLETED HIS WORK AND OR SURRENDERED THE PREMISES TO THE CONTRACTEE."

Plaintiff counters this proposition with argument, some of which is to the effect that the controlling question as to the liability of an indemnifier, like defendant, in an action of this character, is not whether, on the basis of the actual facts, or of information received by the indemnifier or insurer, it is obliged to defend a claim made in a suit against the insured, but whether or not the claim is made in such terms, or by such allegations, that, if they were true, the claim would be one against which such insurer would be obliged to defend the insured, under the provisions of their contract. Cases plaintiff cites appear to support his argument. In some of them, the policy involved had the same type of provision written into the subject policy in the following words:

"II. Defense, Settlement, Supplementary Payments: With respect to such insurance as is afforded by this policy * * * for property damage, liability, the Company shall:

"(a) defend any suit against the insured *alleging such injury* * * * or destruction and seeking damages on account thereof, even if such suit is

groundless, false or fraudulent; * *." (Emphasis ours.)

The rule in such situations is that when the pleaded allegations of the insured's adversary state facts, which, if proved, would bring the insured's asserted liability within the coverage of the policy, then the insurer is thereby obliged to defend the insured against said adversary's claim, alleged cause of action, or counter claim. See Travelers Insurance Co. v. Newsom (Tex.Civ. App.), 352 S.W.2d 888, together with the authorities cited therein, annotated beginning at 50 A.L.R.2d 458, and cited in the notes to 29A, Am.Jur., "Insurance", sections 1452, 1453, and 1454. As to the broad principle just stated, there is not sufficient material difference between this case, and the cited Texas case to render any less applicable to it, the following language there used (p. 893):

> "The clause in this policy providing the insurer will defend any suit '*alleging* such injury' is susceptible of only one meaning. There is not any language in this contract that could by any stretch of the imagination possibly be interpreted to mean that the insured was obligated to investigate the truthfulness of the third party's allegations or to take as true statements procured by the insured, which he would naturally be expected to show favorably to himself. To do so would require the insurer to make a decision as to whether the customer's allegations were true or the statements produced by the insured were true, whereas, the proper decision for the insurer to make is whether the complaint of the third party *alleges* 'such injuries.' The insurer makes that decision at his peril." (Emphasis ours.)

As we see it, the principal significance of the quotations in the defendant's brief from U. S. F. & G. Co. v. Briscoe, 205 Okl. 618, 239 P.2d 754; is that they indicate that the converse of the rule we have stated may not be true, that is, if the insurer knows the true facts concerning the subject of his insured's adversary's claim, and said facts make of it a claim, or action, against which the insurer is obliged, under the policy, to defend the insured, then the allegations of the adversary's pleadings are "incidental", and not controlling as to the insured's obligation to defend. But that is not this case. Nor is this a case in which *neither* the adversary's allegations, nor the true facts, concerning the matter, bring the situation, out of which the adversary's complaint arose, within the coverage of the policy. If there is any doubt as to the matter, it must be resolved in favor of the insured. 79A Am.Jur., sec. 1454, supra. As said concerning the insurer in Boutwell v. Employers' Liability Assurance Corp. (U. S.C.A., 5th Cir.), 175 F.2d 597, 600: "Its obligation was * * * to defend * * * in cases where by any reasonable intendment of the pleadings liability could be inferred." The U. S. F. & G. Co. Case shows that an insurer is not obligated to defend a groundless suit when it would not be liable under its policy for any recovery that could possibly be obtained therein. The greatest weakness in defendant's argument is that it ignores the hereinbefore quoted allegations of the cross-complaint in the federal cause No. 4494, supra, that we have italicized. It is our opinion that, considering these allegations, Casualty, the defendant herein, was obliged under the "operations" coverage of Division 1 of the subject policy, supra, to defend the plaintiff, Willsey, against the hereinbefore quoted cross-complaint, Ferguson and his surety filed against said plaintiff in that federal court action. Our conclusion is not affected by the fact (defendant points out) that, in said cross-complaint, Ferguson and his co-defendant recognized and acceded to an offset, or credit, in favor of plaintiff, and against the counter-claim they were asserting, of the full amount for which plaintiff filed the federal action to collect, or recover. As we see it, such pleading does not obviate the cross-complaint's specific allegations (already pointed out) which tended to indicate that the claim, therein asserted against Willsey, might be within the

coverage of his policy with Casualty. Nor is the present case like Hugh Breeding Transport v. American Fidelity and C. Co., 175 Okl. 508, 54 P.2d 156, wherein the insured, by letter, waived any obligation its insurer might have previously had, to defend it in the action that case concerned.

 Under its second and last "PROPOSITION", defendant complains that no one testified in the trial of this case that the attorneys fees and other items of expense, plaintiff alleged in his petition, were necessary or reasonable. It also says that it was there agreed that two of such items (one in the amount of $100.00, which plaintiff alleged was expense incurred in coming to and from Tulsa to prepare and try the federal court case, cause No. 4494, supra; the other, in the amount of $65.30 was apparently a part of the court costs in said federal court action) could not be properly recovered by plaintiff and that the trial judge, in arriving at the amount of the judgment, clearly disregarded one, but erroneously included the other. We do not have before us a complete record of all that occurred in the trial court, and counsel for defendant leads us to believe that such a record may be unobtainable. However, plaintiff does not deny defendant's representation as to the latter error, but contents himself with advancing a theory, which, in brief substance, seems to be that since defendant unjustifiably refused to defend him in the federal court action, it cannot now complain of a failure of proof with reference to the reasonableness or necessity of expenses he incurred in defending himself, citing Arenson v. National Automobile and Cas. Ins. Co., 48 Cal.2d 528, 310 P.2d 961. (In this connection, see also 29A Am.Jur., "Insurance", section 1460.) A reading of the cited case prompts us to think of hypothetical situations in which questions such as whether or not the amount of attorneys fees incurred by the insured in a case like this was actually earned, or was reasonable, might, equitably speaking, be of less than controlling importance, as, for example, in a case where the insured, on account of financial circumstances, was compelled, in order to engage competent counsel, to do it on a contingent fee, or percentage, basis. Requiring the insured in such a case to prove that, on the basis of their efforts and work alone, his attorneys were entitled to the amount he had contracted to pay them, might (to use certain language in the Arenson Case, supra, p. 968):

> "* * * not only tend to discourage busy attorneys from rendering adequate services for needy clients, but would tend also to encourage insurance companies to similar disavowels of responsibility with everything to gain, and nothing to lose. * * *"

However, we do not think that the defendant's arguments in this case necessitate attempted application of any such considerations. Here, it would appear from the fact that the only specific denial contained in defendant's amended answer, concerning the items claimed in plaintiff's petition as his expenses in connection with federal court litigation, was in the nature of a negative pregnant (see 41 Am.Jur., "Pleading", section 196) and from the further fact that the defendant introduced no evidence at the trial, the challenge contained in defendant's motion for a new trial, of the evidence to show the reasonableness and necessity of such claimed expenses, or obligations, was an afterthought, and presented a theory not advanced, nor relied upon, at the trial. It is elementary in this jurisdiction that a litigant cannot reverse a judgment in this court on a theory different from the one, or more, upon which the case was submitted to the trial court. See Butterick Co. v. Molen, 192 Okl. 602, 138 P.2d 89; Knox v. Eason Oil Co., 190 Okl. 627, 126 P.2d 247. Accordingly, defendant's argument with reference to the reasonableness and necessity of the items making up the total amount awarded plaintiff by the trial court's judgment, except the court cost item of $65.30, present no ground for reversal. As to the latter item, however, the question of reasonableness clearly has no pertinence. If defense counsel's uncon-

tradicted representation as to it is true, the trial court undoubtedly had no authority, or jurisdiction, to include it in his judgment.

In accord with the foregoing, the judgment herein appealed from is hereby affirmed upon condition that within ten (10) days from the date our mandate is spread of record in the trial court, plaintiff file therein his remittitur of $65.30 and waiver of any accumulated interest on that part of the original judgment. If such remittitur is not filed as directed, the trial court's order and/or judgment overruling defendant's motion for a new trial will stand reversed, with directions to said court to vacate same, and grant a new trial.