374 So.2d 179 (1979)
KOERNER & LAMBERT, a Professional Law Corporation
v.
ALLSTATE INSURANCE COMPANY, Burnell D. Robinson and Percy Robinson, Jr.
KOERNER & LAMBERT, a Professional Law Corporation
v.
ALLSTATE INSURANCE COMPANY.
Nos. 10068, 10069.
Court of Appeal of Louisiana, Fourth Circuit.
August 1, 1979.
*180 Louis R. Koerner, Jr. and Terry A. Bell, New Orleans, for plaintiff-appellee.
Porteous, Toledano, Hainkel & Johnson, Robert F. Lakey, New Orleans, for defendants-appellants.
Before SAMUEL, LEMMON and STOULIG, JJ.
SAMUEL, Judge.
Plaintiff, a professional law corporation, filed two law suits, which were later consolidated, against Allstate Insurance Company and other defendants to recover the respective sums of $2,190 and $3,389, representing drafts drawn by Allstate on Deposit Guaranty National Bank, Jackson, Mississippi. Plaintiff had deposited the drafts for collection and, after collection, had disbursed the amounts to various creditors of its client, Paul H. Boucher, d/b/a Marina-Rama, and to itself for professional services rendered. Unknown to plaintiff, the signatures of two of the payees on these drafts had been unauthorized or forged, and Allstate eventually took action, as outlined below, which caused plaintiff's bank to debit its account for $5,579, the total of the two drafts. Defendants answered, denying liability.
After a trial on the merits, judgments were rendered in favor of plaintiff and against Allstate in the amount of $2,190 in one case and $3,389 in the other, together with appropriate interest. The judgments dismissed the suits as to all other defendants. Allstate has appealed.
The record shows that Burnell Robinson and George Driscoll owned boats which were damaged in separate incidents. Coincidentally, both men were insured by Allstate and each independently selected Marina-Rama to perform the necessary repairs.
The owner of Marina-Rama, Paul H. Boucher, submitted repair estimates to Allstate, which furnished two drafts to Boucher. The first, dated August 5, 1976, was in the amount of $2,190 and made payable to the order of Burnell Robinson in full payment of repairs to be done on the Robinson vessel. The second, dated August 11, 1976, was in the amount of $3,389 and made payable to the order of George Driscoll and Marina-Rama for repairs to be done on the Driscoll vessel.
Allstate did not notify either Robinson or Driscoll of the delivery of the drafts to Boucher, nor did it subsequently verify that the signatures on the drafts were actually those of Robinson and Driscoll. Neither Robinson nor Driscoll signed the drafts nor did either have any knowledge of their existence.
Driscoll's signature was forged on his draft, and Robinson's brother was tricked into signing Robinson's name on the other draft after being led to believe it constituted a work authorization. Boucher never repaired the vessels.
Plaintiff represented Boucher in a contemplated bankruptcy proceeding and, in an *181 effort to avoid bankruptcy, Boucher gave the drafts to plaintiff for payment to his creditors. During the month of August, 1976, plaintiff deposited the drafts in its notarial account at the Whitney National Bank in New Orleans for collection and requested of Whitney that it notify plaintiff when the funds were collected and deposited in its account. Only after plaintiff received such notice, also during the month of August, 1976, did it actually disburse the funds in question. As above set forth, disbursement was made to Boucher's creditors and plaintiff retained some of the funds for professional services rendered.
There is no question that plaintiff was entirely free from fault in the transaction; it had no knowledge whatever that signatures on the drafts given it by its client were unauthorized or forged.
More than five months after issuance of the drafts, Robinson contacted Allstate regarding payment for the repairs to his boat. At this time Allstate first notified Robinson that the draft had been given to Boucher. On January 27, 1977, after all checks written by plaintiff had cleared, Allstate obtained a forged signature affidavit from Robinson. Later Driscoll also contacted Allstate regarding payment for repair to his boat, and he was then notified the draft had been given to Boucher. Driscoll also executed a forged signature affidavit.
Allstate presented the affidavits to Deposit Guaranty National Bank, which made demand for collection on Whitney. Pursuant to this demand, Whitney paid Guaranty National $5,579 and debited plaintiff's notarial account for that amount. These lawsuits ensued.
In holding for plaintiff, the trial judge emphasized defendant delivered the drafts only to Boucher and honored them when presented. Only after a fraud was discovered more than five months later did Allstate take any action at all and then only to recover the amounts paid as above set forth. We repeat for emphasis that All state failed to notify their insured the drafts in their names had been given to Boucher.
Revised Statute 10:3-406 provides as follows:
"Any person who by his negligence substantially contributes to a material alteration of the instrument or to the making of an unauthorized signature is precluded from asserting the alteration or lack of authority against a holder in due course or against a drawee or other payor who pays the instrument in good faith and in accordance with the reasonable commercial standards of the drawee's or payor's business." LSA-R.S. 10:3-406. (Emphasis added).
The question of negligence is one of fact for the trial court's determination. The record contains sufficient evidence for the trial judge to have concluded that Allstate was guilty of negligence by entrusting the drafts to Marina-Rama without notifying its insureds or otherwise taking some action to verify the signature of each payee on the drafts and that such negligence substantially contributed to the unauthorized and forged signatures. The record does not justify a reversal by this court of the trial judge's finding of fact in this regard.[1]
Defendant argues that in spite of this finding of negligence, plaintiff violated the warranties of good title, authorized signature, lack of material alteration, etc., imputed to one who obtains payment or acceptance of a negotiable instrument from one who acts in good faith.[2] We do not agree with the argument.
Louisiana law on commercial paper is the result of the legislature's adoption of portions of the Uniform commercial Code by Act 92 of 1974.[3] It is generally regarded by scholars of the Uniform Commercial Code that the question of negligence cuts across the issue of warranty, since the wording of R.S. 10:3-406, quoted above, clearly states *182 that one whose negligence contributes to an unauthorized signature (here also a forgery) "is precluded from asserting the alteration or lack of authority against a holder in due course...." This statutory provision is regarded as an estoppel against the negligent party from asserting the question of warranty under R.S. 10:3-417.[4]
For plaintiff to be a holder in due course, it must have taken the instruments (1) for value, (2) in good faith, and (3) without notice that they were overdue, dishonored, or subject to any defense or claim of any person.[5] Plaintiff clearly took the drafts from its client in good faith and without notice of any defects. Moreover, since it received and without notice of any defects. Moreover, since it received the drafts with the understanding that a part of the proceeds thereof were to be appropriated to a fee balance owed it by its client, it also took the drafts for value. We consequently conclude plaintiff was a holder in due course insofar as R.S. 10:3-406 and 3-417 are concerned.
Having concluded in this case plaintiff was a holder in due course, and having adopted the trial court's conclusion that defendant was guilty of substantially contributing negligence under the above quoted R.S. 10:3-406, it necessarily follows that Allstate is precluded or estopped from asserting the unauthorized signature and forgery against the plaintiff.
For the reasons assigned, the judgments appealed from are affirmed.
AFFIRMED.
NOTES
[1] See Canter v. Koehring Company, La., 283 So.2d 716.
[2] LSA-R.S. 10:3-417.
[3] See Comment R.S. 10:1-101.
[4] See White & Summers, Uniform Commercial Code, Section 16-1 (p. 519) and Section 16-5 (p. 537).
[5] LSA-R.S. 10:3-302.