FIRST STATE BANK OF IDABEL,
OKLAHOMA, a Banking
Corporation, Appellee,

v.

STATE FARM FIRE AND CASUALTY
COMPANY, Appellant.

No. 76054.

Court of Appeals of Oklahoma,
Division 1.

March 24, 1992.

Rehearing Denied May 12, 1992.

Certiorari Denied Nov. 3, 1992.

Kenneth J. Irwin, Oklahoma City, and,
Kenneth D. Upton, Jr., Edmond, for appellant.

Michael D. DeBerry, Idabel, for appellee.

MEMORANDUM OPINION

ADAMS, Judge:

Appellant State Farm Fire And Casualty
Company (Insurer) argues the trial court

erred in granting judgment to Appellee First State Bank of Idabel (Bank) for $17,482.97 plus pre-judgment interest of $8,840.70. Although Insurer does not object to the trial court's use of the summary adjudication process, it argues the undisputed .facts demonstrate it was entitled to judgment rather than Bank.

## FACTS

The material presented to the trial court revealed the facts underlying this action were undisputed. Insurer issued a fire insurance policy (the policy) to Frank Fagg insuring a building and personal property used by Fagg for a restaurant. Fagg had pledged the building and the personal property as collateral to Bank for a loan. For purposes of the building, the policy named Bank as mortgagee in the declarations and contained a mortgage clause providing any loss to the building would be payable to the mortgagee named in the declarations. In addition, Bank had properly perfected its security interest in the personal property, including proceeds.

· The building and its contents were damaged by fire. Insurer paid for losses under the policy totalling $17,482.97 for repairs to the building, including cleaning, and for damaged or destroyed personal property. Insurer's payments were made directly to either Fagg or to individuals or companies providing services or equipment in restoring the property. Insurer did not include Bank in any negotiation concerning settlement of this loss, and Bank was not made a joint payee on any settlement drafts. However, the repairs restored the building to its pre-fire condition and actually increased its value. Because Fagg was in default on his loan, the Bank foreclosed its mortgage and security interest. Bank also filed this action against Insurer seeking payment under the policy.

## THE BUILDING LOSS

■ Insurer first contends judgment for the policy proceeds payable for the loss to the building was inappropriate because the policy reserved to Insurer the right to adjust losses by making repairs. Insurer did not assert this policy based right in the trial court. There, Insurer based its argument upon Fagg's alleged right to use the policy proceeds to make repairs. Insurer's argument in the trial court made no mention of the portion of the policy which Insurer cites on appeal as reserving its right to repair. We will not consider an argument for reversal which advances a theory not raised in the trial court. *Maryland Cas. Co. v. Willsey*, 380 P.2d 254 (Okla.1963).

In addition to its policy-based argument, Insurer contends equity will not allow Bank to retain the benefits of the repairs and also receive the insurance proceeds. The trial court rejected this theory, relying on *Montgomery v. First National Bank of Oregon*, 265 Or. 55, 508 P.2d 428 (1973). In *Montgomery* the Supreme Court of Oregon was faced with a question similar to the one presented here, i.e., the effect on a mortgagee's right under a insurance policy of the mortgagor's use of insurance proceeds to repair damage to the collateral. Noting the existence of two rules, the *Montgomery* opted for the "New York" rule, which it determined to be the majority view, and concluded the mortgagee had an absolute right to the policy proceeds which could not be defeated by the acts of the insured mortgagor. Insurer would have us follow what *Montgomery* characterized as the "minority" or "Wisconsin" rule.

■ The effect of adopting the approach urged by Insurer is unmistakeable. Under Insurer's theory the insured mortgagor is given a unilateral right to determine whether the policy proceeds are to be used to restore the mortgaged premises. Such a right is contrary to the general rule in Oklahoma giving a mortgagee a superior right to policy proceeds. Under that general rule a standard mortgage clause creates a separate contract of insurance in favor of the mortgagee which cannot be defeated by acts of the insured. *Oklahoma State Union of Farm. Ed. v. Folsom*, 325 P.2d 1053

(Okla.1958). The mortgagee is entitled to the proceeds of the policy to the extent of the mortgage debt. *Puckett v. Southeast Plaza Bank,* 620 P.2d 461 (Okla.App.1980). Even when repairs to the premises are contemplated, the proceeds are payable to the mortgagee unless the mortgagee has agreed to use the proceeds to make repairs. See *Savings Building & Loan Ass'n v. Seaman–Packard Lumber Co.,* 170 Okla. 331, 40 P.2d 660 (1935).

Although Insurer's argument that it should not have to pay for the loss twice seems compelling at first blush, closer analysis reveals any detriment to the Insurer was caused by its own failure to live up to the policy. Insurer could have avoided any double payment by involving Bank, a named mortgagee in the declarations, in adjusting this claim. The rule adopted in *Montgomery* is more consistent with our case law on a mortgagee's claim to policy proceeds, and we find no error in the trial court's application of that rule in this case.

## THE PERSONAL PROPERTY LOSS

Although initially claiming a right to policy proceeds for loss to the personal property under the terms of the policy, Bank later changed its theory before the trial court and claimed those funds as a secured party with an interest in proceeds under 12A O.S.Supp.1984 § 9–306. Under this theory, Insurer would be liable for wrongfully paying proceeds in which Bank had a secured interest to Fagg.

On appeal, Insurer offers several arguments why Bank had no security interest in the personal property proceeds and why Insurer is not liable to Bank on this theory. Unfortunately, Insurer never raised these arguments with the trial court. In the trial court, Insurer's sole defense to the property loss claim was the policy limitation which recognized Bank as an insured mortgagee only for loss to the building. In the trial court, Insurer never disputed Bank's claimed security interest in the proceeds attributable to the personal property.

As with Insurer's earlier arguments concerning its right to repair the building, we will not consider an argument for reversal which advances a theory not raised in the trial court. *Maryland Cas. Co. v. Willsey,*

380 P.2d 254 (Okla.1963). Applying § 9–306, which by its terms includes "insurance payable from any source by reason of loss or damage to the collateral", we conclude the trial court did not err in holding Insurer responsible for paying the policy proceeds to Fagg in contravention of Bank's right as a secured party.

## PREJUDGMENT INTEREST

Insurer correctly argues the trial court erred in allowing pre-judgment interest from the date petition was filed to date of judgment. The District Court's reliance on 12 O.S.Supp.1988 § 727, subd. A(2) is misplaced. Section 727 addresses damages for "personal injuries" or "personal rights", not property or contract rights. See *Rainbow Travel Service, Inc. v. Hilton Hotels Corp.,* 896 F.2d 1233 (10th Cir.1990) and *Timmons v. Royal Globe Ins. Co.,* 713 P.2d 589 (Okla.1985). The record does not reflect Bank offered any other basis for prejudgment interest in the trial court, and we will not consider any other basis on appeal.

## CONCLUSION

Based on the undisputed facts and legal issues presented to the trial court, summary adjudication was appropriate because the undisputed facts and all inferences therefrom were consistent only with judgment for Bank. However, the trial court erred in allowing Bank prejudgment interest. The judgment is modified to strike the prejudgment interest, and as modified, the judgment is affirmed.

AFFIRMED AS MODIFIED.

GARRETT, P.J., concurs in result.

BAILEY, J., concurs.