2008 OK CIV APP 87

**BANK OF NICHOLS HILLS, an Oklahoma Banking Corporation, Plaintiff/Appellant,**

v.

**BANK OF OKLAHOMA, a National Banking Association, Defendant/Third–Party Plaintiff/Appellee,**

v.

**Michael A. Russell, an individual; Stacy Russell, an individual; and Green Tree Investment Holdings, L.L.C., Third–Party Defendants.**

No. 104095.

Court of Civil Appeals of Oklahoma, Division No. 4.

April 17, 2008.

Rehearing Denied June 27, 2008.

Certiorari Denied Oct. 6, 2008.

---

Mark D. Mitchell, Mark D. Mitchell, P.C., Mitchell, Davis, Klein & Pickens, Oklahoma City, OK, for Plaintiff/Appellant.

Frederic Dorwart, J. Michael Medina, John D. Clayman, Frederic Dorwart, Lawyers, Tulsa, OK, for Defendant/Third–Party Plaintiff/Appellee.

DOUG GABBARD II, Presiding Judge.

¶ 1 Plaintiff, Bank of Nichols Hills (BNH), appeals a trial court judgment for Defendant, Bank of Oklahoma (BOK), regarding payment of a forged check. The primary issue on appeal is whether BOK presented sufficient proof to support the trial court's finding that the 12A O.S.2001 § 3–406 preclusion defense applied. We find that it did, and affirm.

## FACTS

¶ 2 The parties stipulated to most of the following facts: Michael and Stacy Russell owned a mobile home in Harrah, Oklahoma. The home was insured by Oklahoma Farm Bureau Mutual Insurance Company (Farm Bureau). The insurance policy provided that in case of loss, Farm Bureau "will pay you unless another payee is named on the Declarations page," that "Loss shall be payable to any mortgagee named in the Declarations," and that one of Farm Bureau's duties was to "protect the mortgagee's interests in the insured building." The Declarations page of the policy listed Conseco Finance as the mortgagee. Conseco had a mortgage security interest in the home.

¶ 3 In August 2002, a fire completely destroyed the mobile home. The Russells submitted an insurance claim to Farm Bureau. Farm Bureau then negotiated a $69,000 settlement with the Russells, issued them a check in this amount payable to them and Conseco jointly, and mailed the check to the Russells. Neither the Russells nor Farm Bureau notified Conseco of the loss, the settlement, or the mailing of the check.

¶ 4 The check was drawn on Farm Bureau's account at BNH. The Russells deposited the check into their account at BOK. The check contains an endorsement by both Russells, and a rubber stamp endorsement for Conseco followed by a signature of a Donna Marlatt and a phone number. It is indisputed that Conseco's endorsement was forged.

Upon receipt, BOK presented the check to BNH. BNH paid the $69,000 check and notified Farm Bureau that the check had been paid from its account.

¶ 5 About a year later, Conseco learned about the fire and the insurance payoff. Conseco notified Farm Bureau that it was owed a mortgage balance of more than $50,000. Farm Bureau paid off the balance and notified BNH of the forgery. BNH reimbursed Farm Bureau the amount paid to Conseco. BNH then sued BOK.

¶ 6 Both banks relied on the Uniform Commercial Code, 12A O.S.2001 & Supp.2007 §§ 1–101 et seq. BNH asserted that under § 4–208, BOK had warranted that all the endorsements on the check were genuine. BOK asserted an affirmative defense under § 3–406, alleging that Farm Bureau's own negligence contributed to the forgery.

¶ 7 After a non-jury trial, the court granted judgment to BOK, finding as follows:

— Conseco's endorsement was a forgery, accomplished by the Russells;

— Farm Bureau was negligent in the manner and method it used to process the claim and pay the settlement without providing any notice or opportunity for involvement in the process to Conseco;

— Farm Bureau's negligence substantially contributed to the Russells' conduct in forging Conseco's endorsement; and

— BOK proved its affirmative defense under § 3–406 by the greater weight of the evidence.

¶ 8 From this judgment, BNH appeals.

**STANDARD OF REVIEW**

■■ ¶ 9 The findings of a trial court as to issues of fact "are as binding on appeal as the verdict of a jury, and ... if there is any competent evidence to support the findings, they will not be disturbed on appeal." *Tax/Investments Concepts, Inc. v. McLaughlin*, 1982 OK 134, ¶ 3, 670 P.2d 981, 983. To the extent the case involves a construction of any provision in the Uniform Commercial Code, our review is *de novo*. *See Casey v. Casey*, 2005 OK 13, ¶ 7, 109 P.3d 345, 348.

**ANALYSIS**

■■ ¶ 10 It cannot be disputed that BOK breached its presentment warranty to BNH under 12A O.S.2001 § 4–208.[1] Thus, the primary issue raised is whether BOK established a preclusion defense under 12A O.S. 2001 § 3–406. That section states, in part:

(a) A person whose failure to exercise ordinary care substantially contributes to an alteration of an instrument or to the making of a forged signature on an instrument is precluded from asserting the alteration or the forgery against a person who, in good faith, pays the instrument or takes it for value or for collection.

BNH asserts that the evidence fails to establish this defense because the mailing of its check to and receipt by the insured "is at most an event of opportunity and has nothing to do with the actual forgery."

¶ 11 Section 3–406 requires less stringent proof than the "direct and proximate cause" test for general negligence.[2] Oklahoma

---

1. Section 4–208 provides as follows:

(a) If an unaccepted draft is presented [in this case, by BOK] to the drawee [BNH] for payment or acceptance and the drawee pays or accepts the draft, (i) the person obtaining payment or acceptance, at the time of presentment, and (ii) a previous transferor of the draft, at the time of transfer, warrant to the drawee that pays or accepts the draft in good faith, that:
  (1) The warrantor is, or was, at the time the warrantor transferred the draft, a person entitled to enforce the draft or authorized to obtain payment or acceptance of the draft on behalf of a person entitled to enforce the draft;
  (2) The draft has not been altered; and

(3) The warrantor has no knowledge that the signature of the purported drawer of the draft is unauthorized.
  (b) A drawee making payment may recover from a warrantor damages for breach of warranty. . . .
  (c) If a drawee asserts a claim for breach of warranty under subsection (a) of this section based on an unauthorized indorsement of the draft or an alteration of the draft, the warrantor may defend by proving that ... the drawer [here, Farm Bureau] is precluded under Section 3–406 or 4–406 of this title from asserting against the drawee the unauthorized indorsement or alteration.

2. The parties do not address § 3–406(b), which states that the person asserting preclusion may

Comment (2) to § 3–406; 12 Am.Jur.2d *Bills and Notes* § 607 (1997). Conduct is a contributing cause of an alteration or forgery if it is a substantial factor in bringing it about, or makes it "easier for the wrongdoer to commit his wrong." *Id.* The UCC Comment to § 3–406 notes that the term has the meaning as used by the Pennsylvania court in *Thompson Maple Products, Inc. v. Citizens National Bank,* 211 Pa.Super. 42, 234 A.2d 32 (1967).

¶ 12 In *Thompson,* an independent logger named Albers obtained blank weighing slips, filled them out to show fictitious deliveries of logs for local timber owners, delivered the slips to the company, accepted checks made payable to the timber owners, forged the owners' signatures, and cashed the checks at the bank. When the company discovered the scheme, it sued the bank and the bank raised § 3–406 as a defense. The court specifically found that the company's negligence did not have to be the direct and proximate cause of the bank's acceptance of the forged checks. Instead, the defense applied because the company left blank logging slips readily accessible to haulers, the company had given Albers whole pads of blank slips, the slips were not consecutively numbered, haulers were allowed to deliver both the original and duplicate slips to the company's office, and the company regularly entrusted the completed checks to the haulers for delivery to the payees without the payees' consent. The court noted:

> While none of these practices, in isolation, might be sufficient to charge the plaintiff [the company] with negligence within the meaning of § 3–406, the company's course of conduct, viewed in its entirety, is surely sufficient to support the trial judge's determination that it substantially contributed to the making of the unauthorized signatures.... [T]hat conduct was 'no different than had the plaintiff simply

be held partially liable under comparative negligence principles for failing to exercise ordinary care in paying or taking the check. They also do not address any possible negligence by either

given Albers a series of checks signed in blank for his unlimited, unrestrictive use'. *Id.* at 36 (footnote and citations omitted).

¶ 13 The UCC Comment to § 3–406 gives three examples of conduct illustrating the defense. One example involves an employer who leaves a rubber stamp and blank checks accessible to an employee who later commits forgery; another example involves a company that issues a ten dollar check but leaves a blank space after the figure which allows the payee to turn the amount into ten thousand dollars; and the third example involves an insurance company that mails a check to one policyholder whose name is the same as another policyholder who was entitled to the check. In each case, the company's negligence substantially contributed to the alterations or forgeries by making it easier for the wrongdoer to commit the malfeasance.

¶ 14 In the present case, we find no negligence in Farm Bureau's delivery of the check to the Russells. There is nothing in the insurance policy that prohibits the insurer from making the loss-payment check jointly payable to the Russells and Conseco. Furthermore, under 12A O.S.2001 § 3–420, if a check is payable to more than one payee, delivery to one of the payees is deemed to be delivery to all payees. The authority cited by BOK, in which a check was delivered to one joint payee who then forged the signature of the other, involve cases where the drawer knew or should have known that the wrongdoer was not entitled to be a payee in the first place. *See Koerner & Lambert v. Allstate Ins. Co.,* 374 So.2d 179 (La.Ct.App. 1979); *Fid. & Deposit Co. of Md. v. First Nat'l Bank of Kenosha,* 98 Wis.2d 474, 297 N.W.2d 46 (App.1980); and *W.R. Grimshaw Co. v. First Nat'l Bank & Trust Co. of Tulsa,* 1977 OK 28, 563 P.2d 117.

■ ¶ 15 We also find no negligence in Farm Bureau's violation of its policy provisions requiring the protection of the mortgage holder. Generally, violation of contract provisions and laxity in the conduct of the business affairs of the drawer do not *per se* establish negligence under this section.[3] *See*

bank in accepting the forged check without confirming the legitimacy of Conseco's indorsement.

3. BOK cites *Conner v. Northwestern National Casualty Company,* 1989 OK 85, 774 P.2d 1055;

*Guar. Bank & Trust Co. v. Fed. Reserve Bank of Kansas City,* 454 F.Supp. 488 (W.D.Okla.1977); *East Gadsden Bank v. First City Nat'l Bank of Gadsden,* 50 Ala. App. 576, 281 So.2d 431 (1973).

¶ 16 However, evidence was presented that the contract provision merely reflected an accepted and customary commercial standard in the insurance industry. Failure to conform to the reasonable commercial standards of one's business *has* been recognized by a number of courts as evidence of negligence. *See, e.g., Guar. Bank & Trust Co. v. Fed. Reserve Bank of Kansas City,* 454 F.Supp. 488 (W.D.Okla.1977); *Fid. & Deposit Co. v. Chemical Bank New York Trust Co.,* 65 Misc.2d 619, 318 N.Y.S.2d 957 (N.Y.Sup.App. Term 1970); *Von Gohren v. Pacific Nat'l Bank of Wash.,* 8 Wash.App. 245, 505 P.2d 467 (1973); *Mott Grain Co. v. First Nat'l Bank & Trust Co. of Bismarck,* 259 N.W.2d 667 (N.D.1977); *Hartford Acc. & Indem. Co. v. Dean's Shop–Rite, Inc.,* 48 N.C.App. 615, 269 S.E.2d 282 (1980); *First Nat'l Bank of Kerrville v. Hackworth,* 673 S.W.2d 218 (Tex. Ct.App.1984).

¶ 17 Here, evidence was presented that Farm Bureau did not act in a commercially reasonable manner or in accordance with reasonable commercial standards of its business when it issued the loss check to the insured without notice to the mortgagee. BOK's expert testified that it is standard practice in the industry to notify the lender of a loss this size, *in order to avoid exactly the result that occurred here.* Mortgagees often have a greater financial stake in an insurance policy than do the mortgagors. That was clearly true in this case. While there was opinion testimony to the contrary, the trial court was entitled to conclude that Farm Bureau did not act in a commercially reasonably manner and that this failure was negligence which substantially contributed to the forgery, as contemplated by § 3–406.

*Perfect Investments, Inc. v. Underwriters at Lloyd's, London,* 1989 OK 148, 782 P.2d 932; and *First State Bank of Idabel v. State Farm Fire and Casualty Co.,* 1992 OK CIV APP 33, 840 P.2d 1267, for the propositions that mortgagees have a vested right in insurance proceeds, and that an insurance company's negligent failure to perform

**CONCLUSION**

¶ 18 We find the trial court's judgment supported by the law and competent evidence. Accordingly, the trial court's decision is affirmed.

¶ 19 AFFIRMED.

RAPP, C.J., and GOODMAN, J. (sitting by designation), concur.

its contractual duties is a tort as well as a breach of contract. BOK then argues that negligent performance of an insurance contract is equivalent to actionable negligence that "substantially contributed" to the forgery. We are not persuaded by this argument and note that none of these cases involved § 3–406.